[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION PURSUANT TO PRACTICE BOOK SECTION 954 ON MOTION TO WITHDRAW AS APPELLATE COUNSEL
After a finding on August 2, 1989 by Heiman, J., that defendant was not capable of representing himself at trial, Alan D. McWhirter of the Public Defendant's Office was appointed to represent defendant, Jose Cordero. On September 21, 1989 the defendant, after a trial to the jury before Barnett, J., was convicted of Murder in violation of Connecticut General Statutes Section 53a-54a.
The court (Barnett, J.) on November 3, 1989 sentenced defendant to 60 years/life incarceration. The defendant filed a timely appeal setting forth two grounds 1) errors of law and 2) improper charge to the jury. The defendant is presently incarcerated. He is represented on appeal, as at trial, by Alan D. McWhirter of the Public Defender's Office.
After reviewing the relevant transcripts and applicable law, on July 1, 1991 counsel filed a Motion for Permission to Withdraw as Counsel, which motion was directed to this court. In its motion accompanied by a written report/brief, counsel stated its conclusion that an appeal in this matter would be wholly frivolous and therefore requested permission to withdraw as counsel. Defendant was advised in open court of his right to raise, in writing, additional points in support of his appeal and was given until September 24, 1991 to do so. No writing was received from defendant.
This court concurs with appellate counsel that an appeal would be wholly frivolous and grants counsel's motion to withdraw. This court has reviewed the transcripts of the hearing on the motions to suppress and of the trial consisting of proceedings recorded on August 30, 1989; August 31, 1989; September 1, 1989; September 6, 1989; September 7, 1989; September 8, 1989; September CT Page 1766 11, 1989; September 12, 1989; September 13, 1989; September 14, 1989; September 18, 1989; September 19, 1989; September 20, 1989; and September 21, 1989.
The court has reviewed these transcripts and finds that such appeal would be unlikely to succeed and lacks merit. Further, following such review, the court is unable to find any legal point that would be even arguable on its merits as such standard has been proffered by the United States Supreme Court. Anders v. California, 386 U.S. 738 (1967). Had this court found even an arguable point, it would have appointed successor counsel as mandated. State v. Pascucci, 161 Conn. 882 (1971).
In his original appeal, pro se, defendant raised the issue of an improper jury charge. An intensive review of that charge by this court finds no arguable legal points that might be raised to contravene any portion of it.
Before considering the legal points raised in defendant's brief, a concise statement of some pertinent facts would be in order
In the early evening of September 24, 1988, the body of Pedro a/k/a Pete Vicente was discovered lying on a public highway, Slocum Street in the City of Waterbury, Connecticut. T. 9/1/89 p. 80. Protruding from the victim's chest was the handle of a Phillips Head screwdriver, the blade of which was imbedded in the victim's right chest area. T. 9/6/89 p. 8. Approximately 148 stab wounds had been inflicted in the victim's body by a Phillips Head screwdriver. Dr. Kirt Nolte, a forensic pathologist testified that the cause of victim's death was multiple stab wounds to the head and chest. T. 9/6/89 p. 33.
On September 25, 1988, Detective Philip Rinaldi of the Waterbury Police Department arrested defendant on a charge of Possession of Narcotics. At the time of defendant's arrest, the officer observed stains on defendant's pants and sneakers that he believed to be blood. T. 9/8/89. A search warrant was obtained to secure a sample of defendant's blood for comparison purposes. T. 9/8/89 p. 23.
Beryl Novitch, a criminalist with the Connecticut State Police Forensic Lab, testified that the stains found on defendant's clothing were human blood, consistent in type with that of the victim and inconsistent with the blood type of the defendant. T. 9/11/89 pp. 22, 23.
When questioned by police concerning the murder, defendant denied committing it, said he knew who did it, but that he would take the time. He also asked police whether Connecticut had the CT Page 1767 death penalty. T. 9/8/89 pp. 34, 35.
Lucy Rodriguez and Raul Vincente both testified that earlier in the evening of his death, the victim had been in the company of defendant, in defendant's car. T. 9/7/89 pp. 6-8 and 40-44.
Louis Sepulveda testified that shortly after 8:00 p.m. on the evening of the alleged murder, he was working as a clerk at the South End Mini Market when defendant walked in, purchased two rolls of toilet paper, wiped his hands with a portion of one roll and threw the remainder in the trash. T. 9/7/89 pp. 71-74. Blanca Vidal testified that between 8:00 and 8:30 on the night in question she met defendant on South Main Street, Waterbury and that he had what appeared to her to be blood on his hands. Further, she testified that he asked her where he could wash his hands. T. 9/7/89 pp. 90-91.
Maria Silva Garcia, who lives in the neighborhood where the murder took place, testified that from the back door of her home she had observed defendant at about 8:00 p.m. on September 24, 1988, walking back and forth removing things from the trunk of a car, in the area where victim's body was discovered later that evening. T. 9/12/89 pp. 50-59. The following day, September 25, 1988, Ms. Garcia went to the Waterbury Police Department and identified an automobile in police custody as the one she had seen in the vicinity of the defendant on the prior evening. T. 9/12/89 p. 87. A Police Detective then showed her a photo array of 9 photos in an attempt to obtain an identification. From that array, Ms. Garcia chose 3 that she thought resembled defendant. T. 9/12/89 p. 95. As she was giving a written statement to the police, a man, escorted by three or four officers was brought through the detective room in handcuffs. Without any comment from the officers, Ms. Garcia immediately recognized the person and informed the detective to whom she was giving the statement that that was the man she had seen the night before at the scene of the murder. The man was defendant, Jose Cordero. T. 9/12/89 p. 89.
At trial, defendant called only one witness, Detective Anthony Palladino, who testified that defendant's photo was among the three Ms. Garcia had picked as resembling the man she had seen at the car. T. 9/13/89 p. 5.
Several issues were raised and briefed by counsel. The first is whether the court erred in denying defendant's Motion to Suppress the identification of defendant by Maria Silva Garcia as the man she had observed in the areas where victim's body was found on September 24, 1988.
A full evidentiary hearing on defendant's Motion to Suppress was held by Judge Barnett shortly before the testimony at trial by CT Page 1768 Maria Sylvia Garcia, who was called as defendant's only witness on the motion.
Ms. Garcia testified that on September 25, 1988, the day after the killing she was in the Waterbury Police Department at about 7:00 or 7:30 p.m. to give a statement. She had just identified an automobile in police custody as the one that she had observed defendant going back and forth to on Slocum Street the night before. She also had selected from an array, three photos that she believed resembled defendant. T. 9/12/89 pp. 22, 28.
As she was seated at a desk giving a statement to Detective Palladino, defendant, who was handcuffed, was led through the area accompanied by 3 or 4 officers. Neither Det. Palladino, nor the officers accompanying defendant said anything to her concerning defendant's presence. Ms. Garcia, however, immediately identified defendant to the Detective as the man whom she had seen the previous night at the trunk of the car that she had identified. T. 9/12/89 pp. 24, 29.
The court, in denying the motion to suppress, found that there was no suggestion made to Ms. Garcia by the officers that the man was wanted by the police or suspected by the police of the criminal activity for which she was at the police station. Further, the court found that she was able to identify defendant when he appeared before her without any prompting. T. 9/12/89 p. 39. Therefore, the court concluded that the identification was not impermissibly suggestive as a matter of fact and allowed Ms. Garcia to testify at the trial. T. 9/12/89 p. 40.
No officers were called to testify at the suppression hearing nor was any testimony elicited to suggest that the opportunity for Ms. Garcia to identify defendant as he walked through the police station was other than complete coincidence.
The due process clause of the fourteenth amendment to the United States Constitution requires the exclusion of identification evidence when the procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of an irreparable misidentification. Simms v. United States, 390 U.S. 377, 384 (1968); State v. Doolittle, 189 Conn. 183,190 (1983).
A defendant who moves to suppress identification evidence bears the initial burden of proving that the identification resulted from an unconstitutional procedure. In order to succeed in suppressing identification evidence, a defendant must prove that the identification procedures were unnecessarily suggestive and that the resulting identification was not reliable in the totality of the circumstances. State v. Cubano, 203 Conn. 81
CT Page 1769 (1987); State v. Perez, 198 Conn. 68 (1985).
At the hearing on the Motion to Suppress, the court specifically found that the identification had not been suggestive after considering the totality of the circumstances. T. 9/12/89 p. 22, 31, 32, 37, 39 and 40. The court further found that even had the identification proven to be impermissibly suggestive, he would nevertheless find it to be reliable. T. 9/12/89 p. 40.
Therefore, there is no issue arguable on appeal based on the suppression of identification by Ms. Garcia.
The other issue raised by defendant's counsel is whether the court erred in finding that the evidence was sufficient to support the verdict. Certainly an important issue is whether there was sufficient evidence for a finding of guilt beyond a reasonable doubt. In reviewing the voluminous transcripts of the trial testimony, the standard to be applied in reviewing sufficiency of evidence is whether after reviewing the evidence in the light most favorable to the prosecution any rational trier of facts could have found the essential elements proven beyond a reasonable doubt. State v. Amarillo, 198 Conn. 285 (1986). It is up to the reviewing court to determine whether the [trier] could have reasonably concluded upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt. State v. Pellegrino, 194 Conn. 279, 294 (1984).
This court finds that although based somewhat on circumstantial evidence, the state had submitted a sufficient factual basis of proof on each element of the offense, such that a reasonable trier of facts could indeed find that the State had proven its case against defendant beyond a reasonable doubt. Therefore, there is no arguable issue on this ground.
Further, this court reviewed all rulings on contested evidentiary rulings made by the trial and finds no arguable issues exist on any of those rulings.
Therefore, based on the foregoing, the motion for withdrawal of appearance filed by appellate counsel is granted. A court receiving a request for permission to withdraw as counsel has the authority to appoint another attorney to review the record for non-frivolous issues. Paulsen v. Manson, 193 Conn. 333 (1984) and Connecticut Practice Book Section 955. However, having reviewed and considered all possible claims of error asserted by appellate counsel and after a thorough review of the trial transcript, I concur that an appeal in this case is without merit and is wholly frivolous. Therefore, I decline to appoint other counsel to pursue defendant's appeal. CT Page 1770
KULAWIZ, J.