RONALD E. PAULSEN *v.* JOHN R. MANSON,
COMMISSIONER OF CORRECTION, ET AL.
(11219)

SPEZIALE, C. J., HEALEY, SHEA, GRILLO and DALY, Js.

Argued March 1—decision released June 5, 1984

*Nancy L. Walker* and *Robin L. Troxell,* with whom was *Michael R. Sheldon,* for the appellant (plaintiff).

*Catherine J. Capuano,* special assistant state's attorney, with whom, on the brief, were *Francis M. McDonald,* state's attorney, and *Bradford J. Ward,* assistant state's attorney, for the appellees (defendants).

SHEA, J. The principal issue presented by this appeal is whether a defendant who unsuccessfully attempts to appeal after counsel have been permitted to withdraw

without complying fully with *Anders* v. *California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493, reh. denied, 388 U.S. 924, 87 S. Ct. 2094, 18 L. Ed. 2d 1377 (1967), can be found to have deliberately bypassed his direct appeal. We hold that he cannot and remand for further proceedings.

The petitioner, Ronald Paulsen, appeals from a judgment in a habeas corpus proceeding in which the court found that he deliberately bypassed a direct appeal and was, therefore, precluded from raising any claims concerning the legality of his confinement which could have been raised by appeal. In this habeas appeal Paulsen claims that the court erred (1) in concluding that he deliberately bypassed his direct appeal when he was denied effective assistance of counsel on direct appeal; (2) in taking judicial notice of an exhibit offered by the state but never admitted into evidence; and (3) in concluding that his substantive claim was readily foreseeable before the time for filing his direct appeal had expired. We agree with the contention that the finding of a deliberate bypass was erroneous and, therefore, do not address the other issues.

The events giving rise to this appeal are as follows: On August 11, 1976, Paulsen appeared in court, withdrew an earlier plea of not guilty, and elected to plead guilty to assault in the first degree.[1] The court requested

---

[1] At the time of the offense, which occurred on June 25, 1976, General Statutes (Rev. to 1975) § 53a-59 set forth the elements of the crime of assault in the first degree: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or (2) with intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person."

the assistant state's attorney to set forth the factual basis for the crime charged,[2] informed the defendant of the rights he was foregoing by electing to plead guilty and accepted the plea.

Thereafter, on September 10, 1976, Paulsen appeared for sentencing. Prior to the imposition of sentence he moved to withdraw his plea, alleging that the plea bargain he had agreed to was not being kept. The court denied the motion and subsequently imposed a sentence of not less than seven and one-half years nor more than fifteen years. Paulsen repeated his earlier request to withdraw his plea, and the court again denied the motion.

On September 10, 1976, Paulsen filed an application for waiver of fees, expenses and costs and a request for appointment of appellate counsel. The motion was granted on October 20, 1976, and Raymond Quinn, Paulsen's counsel during the earlier proceedings, was appointed to represent Paulsen.

The following day Quinn filed both a motion to withdraw as appellate counsel and, as required by *Anders* v. *California,* supra, a brief. A transcript of the sentencing hearing was included with the brief, but the transcript of the earlier proceeding when Paulsen had pled guilty was not submitted to the court. Quinn's motion was granted and Attorney Richard Atkins was appointed to make a further review in order to determine whether there was any appealable issue.

---

[2] The assistant state's attorney recited the following facts: "[Paulsen] was accompanying one David Collins at approximately 11:35 on June 25, 1976 at or near the Middlebury-Southbury town line on Route I-84. They were stopped by the police officer, as I mentioned, and the police officer was shot in the right arm by this man's companion, Collins. The police officer returned fire and subsequently apprehended them."

Paulsen claimed, in his petition for habeas corpus, that the factual basis recited above was insufficient to support his guilty plea. See *State* v. *Marra,* 174 Conn. 338, 387 A.2d 550 (1978).

On March 1, 1977, Atkins, who conceived his duty as limited to "review[ing] the issues raised in Attorney Quinn's brief," filed a motion to accept the report. At the hearing on that motion Atkins stated, "when I started to prepare that report, I was advised by Mr. Paulsen he felt there were other issues he now wanted to raise on appeal, but were not dealt with in Mr. Quinn's brief nor dealt with by me because I felt my responsibility was only to review the brief filed by Mr. Quinn. In addition to feeling there were other appealable issues which involves [sic] inadequacy of counsel and due process and various other items, warranted review on appeal." Although neither Atkins nor Quinn had filed the transcript of the plea proceeding, the court accepted the report and permitted Atkins to withdraw as counsel. A motion for extension of time for filing the appeal was filed by Atkins on behalf of Paulsen, and Paulsen was given until March 22, 1977, to file an appeal.

On March 16, 1977, Paulsen, proceeding pro se, filed a "motion for enlargement" requesting a further extension in which to file his appeal. The motion was granted, and the time for filing was extended until May 15, 1977. No further action was taken by Paulsen concerning his appeal. Paulsen maintained that he did not receive notification that his motion had been granted, leading him to believe that his appeal had expired.

On July 25, 1980,[3] Paulsen filed the petition for writ of habeas corpus that is the subject of this appeal.

---

[3] Between May 15, 1977, the date when the time for filing the appeal elapsed, and July 25, 1980, the petitioner filed a "petition for mandatory injunction" in federal court and an application for writ of habeas corpus in Superior Court. The request for injunctive relief was treated by the federal court as an application for a writ of habeas corpus and dismissed for failure to exhaust state remedies. The application for a writ of habeas corpus presented to Superior Court was also dismissed. The state has not claimed that this disposition has any significance in relation to this appeal.

Thereafter, on October 14, 1981, the court rendered judgment for the state, dismissing the petition.

In its memorandum of decision the court rejected Paulsen's claim that he had not been notified that the appeal period had been extended to May 15, 1977, and also found that Paulsen had neglected to ascertain whether his motion for enlargement had been granted. Relying upon this combination of factors, the court concluded that Paulsen had not carried his burden of proof on the issue of deliberate bypass.

I

In his amended petition for a writ of habeas corpus,[4] Paulsen alleged that the failure of the attorneys appointed for the appeal to review the transcript of the plea proceeding and submit it to the court undercuts any suggestion that he deliberately bypassed his right of appeal. Although the memorandum of decision does not expressly address this issue, we construe the decision to reject the argument pressed by the petitioner. See *Apostles of the Sacred Heart* v. *Curott,* 187 Conn. 591, 600, 448 A.2d 157 (1982).

A petitioner seeking to raise federal constitutional claims in a collateral proceeding must first allege and establish by a preponderance of the evidence that he did not deliberately bypass the orderly procedure of direct appeal. *D'Amico* v. *Manson,* 193 Conn. 144, 146–47, 476 A.2d 543 (1984); *Morin* v. *Manson,* 192 Conn. 576, 579, 472 A.2d 1278 (1984); *McClain* v. *Manson,* 183 Conn. 418, 433, 439 A.2d 430 (1981); *Vena* v. *Warden,* 154 Conn. 363, 225 A.2d 802 (1966). The deliberate bypass rule serves two important functions: (1) it encourages a litigant to have all constitutional claims resolved in a single proceeding economizing the time and resources of all concerned parties and bring-

---

[4] Paulsen was permitted to amend his original petition on December 5, 1980.

ing the case to a conclusion; and (2) it prevents a prisoner from deliberately deferring his claims of unlawful confinement until a time when a new trial, if required as a result of the collateral proceeding, would be, for all practical purposes, impossible. See *Morin* v. *Manson,* supra, 579.[5]

The apparent harshness of the deliberate bypass rule has been softened somewhat by "requiring that the record before us . . . disclose some reasonable basis for concluding that a convicted person has intelligently, understandingly and voluntarily waived his statutory right to appeal." *D'Amico* v. *Manson,* supra, 146–47. Only after it is demonstrated that a petitioner's decision to forego his appeal was voluntarily, knowingly, and intelligently made, can a court conclude that there has been an intentional relinquishment or abandonment of the right of appeal. *D'Amico* v. *Manson,* supra, 148; *Staton* v. *Warden,* 175 Conn. 328, 335, 398 A.2d 1176 (1978). Whether the evidence is sufficient to support a finding of deliberate bypass depends, of course, on the varying circumstances of each case. See *McClain* v. *Manson,* supra, 429.

The facts in the present case are insufficient to establish an intentional relinquishment of the right to appeal. When Paulsen initially sought appellate review of his conviction he was given the assistance of counsel as required by our federal constitution. *Douglas* v. *California,* 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811, reh. denied, 373 U.S. 905, 83 S. Ct. 1288, 10 L. Ed. 2d 200 (1963). Subsequently, however, both Quinn and Atkins were granted permission to withdraw as his counsel. Quinn, who was the first to withdraw, failed to review

[5] Similar goals have been recognized by the United States Supreme Court in its "cause" and "prejudice" standard. See *Wainwright* v. *Sykes,* 433 U.S. 73, 88–90, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); see generally comment, "Lundy, Isaac and Frady: A Trilogy of Habeas Corpus Restraint," 32 Cath. U.L. Rev. 169 (1982).

the transcript of the plea proceeding or submit it to the court.[6] Atkins, who was appointed by the court to make a further review; see *Fredericks* v. *Reincke,* 152 Conn. 501, 505, 208 A.2d 756 (1965); also failed to submit the plea proceeding transcript to the court or to investigate any of the claims his client requested him to review, claiming that it was "his understanding that he was appointed only to review the issues raised in Attorney Quinn's brief . . . ."[7] The court, therefore, permitted both attorneys to withdraw and concluded that Paulsen's appeal was frivolous without a full examination of prior proceedings,[8] a portion of which was never made available to the court.

---

[6] At the time Quinn filed his motion, Practice Book §§ 2363 and 2364 set forth the procedural steps required of an appointed counsel seeking to withdraw.

"Sec. 2363. REQUEST BY INITIAL COUNSEL TO WITHDRAW

"When the defendant is represented at trial by the public defender or when he has counsel appointed for him to prosecute his appeal under the provisions of Sec. 2361 and such public defender or counsel, after a conscientious examination of the case, finds that such an appeal would be wholly frivolous, he shall advise the presiding judge and request permission to withdraw from the case. (Adopted June 7, 1976, to take effect Oct. 1, 1976.)"

"Sec. 2364. SUBMISSION OF BRIEF

"At the time such request is made, counsel shall submit to the presiding judge a brief which refers to anything in the record that might arguably support the appeal. A copy of such brief shall be provided to the defendant, and the defendant shall be further allowed a reasonable time to raise, in writing, additional points in support of his appeal. (Adopted June 7, 1976, to take effect Oct. 1, 1976.)"

[7] This court set forth what is required of counsel appointed to replace a previous attorney who has requested to withdraw in *Fredericks* v. *Reincke,* 152 Conn. 501, 505, 208 A.2d 756 (1965): "If, however, the new counsel, after interviewing the plaintiff and his witnesses, consulting with trial counsel, examining the trial record and conducting such investigation as he deems necessary to ascertain the merits of the appeal, comes to the conclusion that there is no substantial error which he can assign on appeal and so advises the plaintiff and the trial court [he may withdraw]."

[8] Practice Book § 2365 (1976) provided that:

"Sec. 2365. FINDING THAT APPEAL IS FRIVOLOUS

"The presiding judge shall fully examine the briefs of counsel and of the defendant, and shall review the transcript of the trial. If, after such examination, the presiding judge concludes that the defendant's appeal is wholly

It cannot be seriously maintained that Paulsen was not erroneously deprived of his right to counsel on appeal. Whenever appointed counsel seeks to withdraw from his role as appellate advocate, he is required, as a matter of constitutional law, to file "a brief referring to anything in the record that might arguably support the appeal." *Anders* v. *California,* 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). This minimum level of constitutionally acceptable conduct presupposes that appellate counsel will review the transcripts of all prior proceedings in order to fulfill the "role of an active advocate."[9] Our federal constitution also requires "the court—not counsel—[to proceed], after a full examination of all the proceedings, to decide whether the case is wholly frivolous." Id. Both the court and counsel in

---

frivolous, he may grant counsel's motion to withdraw and refuse to appoint new counsel. Before refusing to appoint new counsel, the presiding judge shall make a finding that the appeal is wholly frivolous and shall file a memorandum, setting forth the basis for his finding. (Adopted June 7, 1976, to take effect Oct. 1, 1976.)"

[9] "The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.* The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accomplished by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." (Footnote omitted.) *Anders* v. *California,* 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493, reh. denied, 388 U.S. 924, 87 S. Ct. 2094 18 L. Ed. 2d 1377 (1967).

this case failed to conform their conduct to these constitutionally mandated requirements, imposing on Paulsen the burden of complying with our rules of practice for filing an appeal without the aid of counsel.

A determination that a defendant failed to pursue his appeal after being properly advised of that right and after counsel has properly withdrawn is ordinarily sufficient to support a finding that the right of appeal was knowingly, voluntarily and intelligently waived. See *D'Amico* v. *Manson,* 193 Conn. 144, 149, 476 A.2d 543 (1984); *Morin* v. *Manson,* 192 Conn. 576, 580, 472 A.2d 1278 (1984). Where, as here, however, the petitioner has been involuntarily deprived of his right to counsel on appeal without full compliance with the constitutional standard set forth in *Anders* v. *California,* supra, for allowing appellate counsel to withdraw, his subsequent failure to perfect the appeal cannot be characterized as a knowing, voluntary and intelligent waiver. See *Staton* v. *Warden,* 175 Conn. 328, 335, 398 A.2d 1176 (1978); *State* v. *Brown,* 157 Conn. 398, 401, 254 A.2d 570 (1969); *Fredericks* v. *Reincke,* supra. "The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution." *Johnson* v. *Zerbst,* 304 U.S. 458, 465, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938).

There is error on the finding of a deliberate bypass, the judgment is vacated, and the case is remanded for further proceedings.

In this opinion the other judges concurred.