CITY OF WATERBURY *v.* PHOENIX SOIL, LLC
(AC 31093)

DiPentima, C. J., and Beach and Bear, Js.

Argued January 20—officially released May 17, 2011

*Michael G. Tansley*, with whom was *Heather L. Dostaler*, for the appellant (plaintiff).

*Mark S. Shipman*, with whom was *Steven C. Sosensky*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiff, the city of Waterbury, appeals from the judgment of the trial court finding in its favor against the defendant, Phoenix Soil, LLC,[1] but allegedly failing to grant adequate or appropriate remedies. On appeal, the plaintiff claims that the court (1) improperly failed to grant an injunction against the defendant's breach of the parties' contract and, instead, fashioned an equitable remedy that favored the defendant despite finding in favor of the plaintiff on all issues and (2) improperly changed the terms of the parties' agreement. We affirm the judgment of the trial court.

The court set forth the following relevant facts and procedural history. In 1992, the defendant began its operation of a contaminated soil remediation and recycling facility at 130 Freight Street in Waterbury, wherein it intended to utilize a low thermal temperature desorption (desorption) unit to treat and recycle contaminated soil. The plaintiff, together with several neighborhood groups and individuals, opposed the application of the defendant to the Connecticut department of environmental protection (department) for an air permit to operate the desorption unit. Subsequently, the plaintiff, who successfully intervened in the proceeding on the defendant's application before the department, entered into a March 2, 1993 agreement with the defendant. The parties agreed that the plaintiff

[1] In 1992, the defendant was known as Phoenix Soil, Inc. On November 23, 1994, Phoenix Soil, Inc., changed its name to Soil Recyclers, Inc. Also on November 23, 1994, Phoenix Soil, LLC, was formed by the sole director and shareholder of Phoenix Soil, Inc. Phoenix Soil, LLC, later purchased the physical assets of Soil Recyclers, Inc., when Soil Recyclers, Inc., dissolved in April, 2002. The trial court determined that these entities effectively were the same entity for all relevant purposes. This finding is not challenged on appeal. Accordingly, we do not distinguish between them.

would withdraw its opposition to the defendant's permit application in exchange for the defendant agreeing, inter alia, that (1) it would operate the desorption unit, "post stack testing," for no longer than three years, (2) it would not seek any expansions or extensions of its permit without the express permission of the plaintiff's board of aldermen and (3) both the plaintiff and the defendant would use their best efforts to find an alternative site for the defendant to operate a similar facility.

On June 30, 1993, the defendant received a temporary air permit, allowing it to operate its desorption unit for a period of one year. The final air permit approval was conditioned on successful emission smokestack testing. Subsequently, on August 30, 1994, the defendant and the department entered into a consent order whereby the defendant was permitted to continue operation of the desorption unit until September 1, 1995, unless a later date was agreed to in writing or the final permit to operate the unit was issued. The August 30, 1994 consent order also required the defendant to submit a complete permit application within sixty days. The sixty day time limit, however, was extended to 393 days. Stack testing did not commence until December, 1994, and it continued into 1995.

On February 2, 1996, the defendant and the department entered into a second consent order permitting the defendant additional operation time through October 30, 1996. The February 2, 1996 consent order, however, was extended on four subsequent dates, ultimately permitting the defendant to operate the desorption unit until March 31, 1998, at which point the defendant apparently temporarily ceased its operation of the desorption unit.

In April, 1998, the plaintiff commenced the present action against the defendant, seeking a declaratory judgment to determine (1) whether the defendant had

the right to operate its desorption unit because more than three years had passed since the final stack testing, (2) if it did have the right to operate its desorption unit, a declaration as to when the three year operation limit agreed on by the parties expired and (3) whether the defendant's extension of the height of the smokestack, which occurred without the approval of the plaintiff's board of aldermen, was a breach of the parties' agreement.[2] On March 23, 1999, the department issued to the defendant a five year final air permit.

In May, 2006, eight years after the initiation of this litigation, the plaintiff amended its 1998 complaint to include a breach of contract claim, alleging that "[t]he actions of the defendant in operating beyond the three year period provided for in the [parties'] [a]greement, obtaining a permit from the [department] for a five year period, seeking an extension of said permit for an additional five year period,[3] and in expanding the permit . . . constitute[d] a breach of the [a]greement of the parties." The amended complaint contained a prayer for the following relief: (1) a declaratory judgment determining whether the defendant has the right to operate at its current location, and, if it does have the right to operate, the date on which that right shall terminate and a declaration as to whether the defendant expanded the permit in violation of the agreement; (2) an order of specific performance of the parties'

[2] Prior to the plaintiff's commencement of this action, the department gave the defendant a mechanical permit allowing it to extend its sole smokestack for the desorption unit an additional fifty-two feet in height.

On June 17, 2008, the plaintiff withdrew the second count of its amended complaint in which it had alleged that the defendant's extension of the smokestack, which had occurred without the approval of the plaintiff's board of aldermen, was a violation of the parties' agreement.

[3] On November 21, 2003, the defendant filed an application for an air permit renewal, which would permit it to continue its operation in the plaintiff city. At the time of the court's decision in this case in March, 2009, that application remained pending.

agreement, requiring the defendant to abide by the terms of the agreement and to cease operating its desorption unit immediately; (3) a permanent injunction enjoining the defendant from operating its desorption unit at its current location and (4) "[a]ny and all other relief which the court in equity may deem appropriate."[4]

The defendant filed an answer and several special defenses to the amended complaint, alleging that the complaint failed to state a claim on which relief could be granted, waiver and unclean hands, that the plaintiff's own actions and conduct in breaching the agreement barred recovery, equitable estoppel, that the agreement did not apply to successors[5] and that the plaintiff materially breached the agreement thereby relieving the defendant of its obligation to perform.

The matter was tried to the court, *Cremins, J.,* on July 1 and 2, 2008. Throughout the proceedings, the plaintiff argued that the three year period of operation of the desorption unit already had expired. The defendant argued that the parties' agreement provided that the three year period of operation for the desorption unit did not commence until it received a final air permit that no longer required stack testing and that it had not expired.

On March 26, 2009, the trial court filed its memorandum of decision in which it found that the three year period of operation for the desorption unit had begun to run on March 23, 1999, at the time the final air permit was issued. Nevertheless, the court ordered that, because the plaintiff had failed "to actively pursue its action for nearly seven years," the parties' agreed that

---

[4] The court did not specify whether it awarded its equitable remedy under the plaintiff's first or fourth prayer for relief. We have analyzed the plaintiff's claims pursuant to its fourth prayer for relief.

[5] See footnote 1 of this opinion.

the three year period for the operation of the desorption unit would commence from the date of the court's March 26, 2009 decision.[6] No further relief was granted. The plaintiff thereafter filed a motion to reargue and to modify, requesting, inter alia, that the court issue a ruling on whether the defendant was in breach of the agreement and that it order a permanent injunction enjoining the defendant from operating the desorption unit on or after March 26, 2012, to avoid the necessity of further litigation. The court denied the motion. This appeal followed.

I

The plaintiff first claims that the court improperly failed to grant an injunction for the defendant's breach of the contract and, instead, fashioned an equitable remedy not requested by either party. The plaintiff argues that the court specifically found that the defendant was bound by the contract, and the judgment file clearly states that all issues were found in favor of the plaintiff. Therefore, the plaintiff argues, the court necessarily found that the defendant had breached the contract as was alleged in the plaintiff's complaint, but it failed to grant the plaintiff its requested injunctive relief and, instead, issued an order not requested by the plaintiff, allowing the defendant to continue to operate its desorption unit until March 26, 2012. The defendant argues that the court acted properly in declining to award injunctive relief because the plaintiff presented no evidence of irreparable harm to support such extraordinary relief. Furthermore, the defendant argues, the trial court did not conclude that it had breached the contract.

---

[6] In its appellate brief, the plaintiff requests that we reverse the judgment of the trial court and remand the matter with instructions that the court "[a]t a minimum . . . enjoin [the defendant] from continuing to operate the [desorption] unit at the premises after March 26, 2012," which is the last day of such three year period.

Before addressing the merits of this claim, we first consider whether the court found that the defendant had breached the contract. "The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Internal quotation marks omitted.) *JSA Financial Corp.* v. *Quality Kitchen Corp. of Delaware*, 113 Conn. App. 52, 62–63, 964 A.2d 584 (2009).

The following additional facts are relevant. After the plaintiff filed the present appeal, it requested the trial court to articulate several issues, including whether it had found the defendant in breach of the parties' contract. The trial court denied the plaintiff's request, and the plaintiff filed a motion for review with this court. After granting the motion for review, we ordered the court to articulate, inter alia, if it had decided the breach of contract issue, to which the court responded: "The [plaintiff's] claim for breach of contract was implicitly disposed of in the court's memorandum of decision." The court also stated that the factual and legal basis for its decision was clearly set forth in its memorandum. Although the defendant argues that the court did not find that the defendant breached the parties' contract, we conclude that the court found in favor of the plaintiff on all issues, including its breach of contract claim. See *Paulsen* v. *Manson*, 193 Conn. 333, 337, 476 A.2d 1057 (1984) (despite trial court's failure to address issue expressly, Supreme Court construed implicit holding); see also *Apostles of the Sacred Heart* v. *Curott*, 187 Conn. 591, 600, 448 A.2d 157 (1982).

In this case, the court found that the plaintiff's "position [was] correct and that the three years [for the defendant to operate the desorption unit] began to run at the time the final air permit was issued, which was March 23, 1999 . . . ." The court also found that the agreement provided that the defendant could operate the desorption unit for no longer than three years at the Freight Street location after the issuance of the final air permit and that the defendant was bound by the terms of the contract. Furthermore, the judgment file clearly states that the court found all issues in favor of the plaintiff. On the basis of the court's explicit findings, namely that the defendant was bound by the terms of the contract, that the defendant expressly could operate the desorption unit at its Freight Street location for no more than three years after the final air permit was issued and that the final air permit was issued on March 23, 1999, we conclude that the court impliedly found that the defendant breached the contract by continuing to operate beyond the specific three year period permitted by the contract. Accordingly, although the court did not conclude explicitly that the defendant had breached the parties' contract, we construe the decision as being in favor of the plaintiff on that issue. See *Paulsen* v. *Manson*, supra, 193 Conn. 337.

We next consider whether the court abused its discretion in declining to grant the specific injunctive relief requested by the plaintiff in its second prayer for relief. "A prohibitory injunction is an order of the court restraining a party from the commission of an act. . . . Black's Law Dictionary (6th Ed. 1990); H. McClintock, Principles of Equity (2d Ed. 1948) § 15, p. 32." *Tomasso Bros., Inc.* v. *October Twenty-Four, Inc.*, 230 Conn. 641, 652, 646 A.2d 133 (1994). In this case, the plaintiff sought an injunction prohibiting the defendant from continuing to operate the desorption unit in breach of the parties' agreement. "The granting of an injunction rests within

the sound discretion of the trial court and [i]n exercising its discretion, the court . . . may consider and balance the injury complained of with that which will result from interference by injunction. . . . The relief granted must be compatible with the equities of the case. . . . The action of the trial court will not be disturbed unless it constitutes an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Castonguay* v. *Plourde*, 46 Conn. App. 251, 266–67, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997).

The plaintiff argues that the court was required to grant it injunctive relief because the defendant was in violation of a restrictive covenant contained in the parties' agreement, which prohibited the defendant from operating the desorption unit for more than three years after the final air permit was issued by the department. It further argues that although a party seeking an injunction normally must plead and prove irreparable harm, it was not required to do so in this case because the case concerned a violation of a restrictive covenant.[7] The defendant argues that the plaintiff's use of the phrase " 'restrictive covenant' " is a misnomer, and "it adds nothing to the remedies that are available for [a] breach [of contract]." It further argues that the plaintiff was required to plead and to prove irreparable harm.

We thoroughly have reviewed the court's memorandum of decision and can find no instance therein where it discussed an allegation that the defendant had breached a restrictive covenant, nor can we find that phrase in the plaintiff's amended complaint. We also

---

[7] "The case law . . . shows that the general rule requiring that substantial irreparable injury must threaten before an injunction will issue is subject to an exception. A restrictive covenant may be enforced by injunction without a showing that violation of the covenant will cause harm to the plaintiff, so long as such relief is not inequitable." *Hartford Electric Light Co.* v. *Levitz*, 173 Conn. 15, 22, 376 A.2d 381 (1977).

have reviewed the plaintiff's motion for articulation and its motions for review, none of which addresses any issue concerning a restrictive covenant or the court's failure to rule on such an issue. Furthermore, although the plaintiff argues that it raised the issue of the defendant's violation of a restrictive covenant in its pretrial and posttrial briefs, a review of the pleadings reveals that it did not raise it in its amended complaint, nor does it appear that the trial court considered it. Nevertheless, even if we assume, arguendo, that the part of the contract that was breached could be characterized as a restrictive covenant and that the issue properly was raised before the trial court and sufficiently was pleaded, the court, nevertheless, had discretion when deciding whether to issue an injunction in this case.

"When presented with a violation of a restrictive covenant, the court is obligated to enforce the covenant unless the defendant can show that enforcement would be inequitable." *Gino's Pizza of East Hartford, Inc.* v. *Kaplan*, 193 Conn. 135, 139, 475 A.2d 305 (1984). Our case law does "not require issuing an injunction whenever enforcement of a restrictive covenant is sought. An injunction is an equitable remedy, and may be denied if the balance of the equities favors the defendant." *Hartford Electric Light Co.* v. *Levitz*, 173 Conn. 15, 21, 376 A.2d 381 (1977).

In this case, the court very clearly determined that equity required that the defendant be permitted to operate the desorption unit until March 26, 2012, and, thus, the plaintiff's prayer for an injunction enforcing the immediate closing of the facility was not appropriate. The court, hearing all the evidence, found that the plaintiff "did not prosecute this action from 1999 to 2006, after the action was first commenced in 1998.[8] As the

---

[8] We note that at the time the plaintiff commenced this action in 1998, the final air permit had not yet been issued to the defendant by the department.

court is fashioning an equitable remedy in the present case, the court finds that given [the plaintiff's] failure to actively pursue its action for nearly seven years, the court orders that the three year period for operation of the [desorption] unit at the premises begin to run from the date of this decision provided all necessary permits are in place." Accordingly, in balancing the equities in this case, the court clearly believed that the plaintiff's delay in prosecuting the case in court required that the defendant be given time, namely three years, before being required to discontinue the operation of the desorption unit. On the facts of this case, we cannot conclude that this was an abuse of the court's discretion.

The plaintiff filed this action in 1998, one year before the final air permit was issued by the department, seeking a declaratory judgment concerning the defendant's right to operate the desorption unit. Not until 2006 did the plaintiff amend its pleading to include a breach of contract claim, more than seven years after filing the initial complaint. Although the plaintiff argues that "the court" extended the contractual time frame for ten years after the operation of the desorption unit should have ceased, clearly the court found that it was the plaintiff who extended the time frame by failing to prosecute the action it had filed in 1998 while the facility temporarily had ceased its operation; thus, it was the plaintiff and not the court that unduly delayed the proceedings. The parties disputed the defendant's rights under the contract, and, after those issues were determined by the court, in light of its finding concerning the plaintiff's delay in prosecuting its action, the court acted within its discretion in declining to issue an injunction requiring the defendant to cease operation immediately.

As to the plaintiff's argument that even if the court acted properly in not issuing an immediate injunction,

it, nonetheless, should have issued a prospective injunction requiring the defendant to cease its operations no later than March 26, 2012, we conclude that the plaintiff did not request such a prospective injunction in its pleadings.[9] See *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 686, 804 A.2d 823 (2002) ("the right of a plaintiff to recover is limited by the allegations of the complaint . . . and any judgment should conform to the pleadings, the issues and the prayers for relief" [internal quotation marks omitted]).

The plaintiff, in its prayer for relief in its amended complaint, appears to have assumed that the court would issue an immediate injunction enjoining the defendant from operating its desorption unit. The language of the plaintiff's prayer for relief does not appear to have contemplated the need to have the trial court issue a future injunction. Accordingly, we cannot conclude that the court abused its discretion in failing to grant relief that was not requested by the plaintiff, and, in any event, it was within the discretion of the court as a matter of equity to determine that the issuance of such an injunction was not warranted in the circumstances of these parties.

II

The plaintiff also claims that the court improperly changed the terms of the parties' agreement. The plaintiff argues that "the court on its own initiative extended the three year period set forth in the agreement and has, in fact, extended such period for ten years after the parties intended [the defendant] to cease operating the [desorption] unit on the premises." We conclude that the court did not change the terms of the agreement

---

[9] The plaintiff's third prayer for relief sought a permanent injunction but not prospective relief. The plaintiff attempted to correct its omission by filing a posttrial motion to reargue and to modify in which it sought such prospective injunctive relief.

but, rather, as a consequence of the plaintiff's undue delay in prosecuting this case and in light of its amendment eight years after this action was initiated to add a count for breach of contract, fashioned an appropriate equitable remedy permitting the defendant three years to cease operating the desorption unit on its premises.

"In an equitable proceeding, the trial court may examine all relevant factors to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court." (Internal quotation marks omitted.) *Electrical Wholesalers, Inc.* v. *M.J.B. Corp.*, 99 Conn. App. 294, 301, 912 A.2d 1117 (2007). "Although we ordinarily are reluctant to interfere with a trial court's equitable discretion . . . we will reverse where we find that a trial court acting as a court of equity could not reasonably have concluded as it did . . . or to prevent abuse or injustice. . . . *Fellows* v. *Martin*, 217 Conn. 57, 67–68, 584 A.2d 458 (1991); see also *Petterson* v. *Weinstock*, 106 Conn. 436, 446, 138 A. 433 (1927) ([o]ur practice in this [s]tate has been to give a liberal interpretation to equitable rules in working out, as far as possible, a just result)." (Internal quotation marks omitted.) *19 Perry Street, LLC* v. *Unionville Water Co.*, 294 Conn. 611, 629–30, 987 A.2d 1009 (2010).

In this case, the plaintiff requested, inter alia, equitable relief. A thorough review of the court's decision leads us to conclude that the plaintiff was given equitable relief, although such relief was not what it had expected in setting forth its three prayers for specific relief.[10] The court found that the defendant had breached the agreement but that, because the plaintiff had failed to prosecute this action for nearly seven

[10] See prayers for relief set forth in the fact section of this opinion, pages 623–24.

years, leaving the issue of the defendant's right to operate unresolved, the defendant should be given three years to wind down operation of the desorption unit. As we concluded in part I of this opinion, on the facts of this case, this was not an abuse of discretion nor was this a rewriting of the parties' agreement.

The judgment is affirmed.

In this opinion the other judges concurred.