******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARK GANCSOS *v.* LIOR ISRAEL ET AL.
(AC 47692)

Alvord, Clark and Lavine, Js.

*Syllabus*

The defendant property owners appealed from the trial court's judgment for the plaintiff, an abutting property owner, in connection with the defendants' trespass and breach of contract involving a shared easement area. The defendants claimed, inter alia, that the court improperly found that they had trespassed on the plaintiff's property. *Held*:

The trial court's conclusion that the defendants trespassed on the plaintiff's property was not clearly erroneous, as the court's finding that the plaintiff possessed the disputed area where he had installed a fence had support in the record and this court was not left with a definite and firm conviction that a mistake had been committed.

The trial court did not abuse its discretion in ordering injunctive relief for the plaintiff, namely, that the defendants restore the easement area to its prior condition by removing certain curbing and stone walls they had installed, because the plaintiff, as an owner of the easement who had been disturbed in the exercise of his right of access to his property, was permitted to enforce his covenant by injunction without a showing that violation of the covenant will cause him harm, so long as such relief was not inequitable.

Argued April 21—officially released July 8, 2025

*Procedural History*

Action to recover damages for, inter alia, trespass, and for other relief, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Frechette, J.*; judgment for the plaintiff, from which the defendants appealed to this court. *Affirmed.*

*David L. Weiss*, for the appellants (defendants).

*David V. DeRosa*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. This appeal arises from a dispute between owners of abutting properties located in

Cheshire. The defendants, Lior Israel and Perla Israel,[1] appeal from the judgment of the trial court rendered in favor of the plaintiff, Mark Gancsos, in the plaintiff's action alleging trespass and breach of contract. On appeal, the defendants claim that the trial court improperly (1) found that the defendants trespassed on the plaintiff's property and (2) ordered injunctive relief. We affirm the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of this appeal. The plaintiff and the defendants own abutting properties in Cheshire. The plaintiff acquired title to and has resided with his wife, children, and mother at the property located at 780 Bethany Mountain Road (plaintiff's property) since 2019. The defendants acquired title to and have resided at the property located at 776 Bethany Mountain Road (defendants' property) since 2022.

The two properties, as well as a property at 770 Bethany Mountain Road (neighboring property), share a common driveway (driveway). The driveway is located on the defendants' property, but the driveway is subject to an easement and a private access maintenance agreement (agreement) governs the use of the easement. The agreement, which was recorded on the Cheshire land records in February, 2019, allows the owners of the plaintiff's property and the neighboring property to use the portion of the defendants' property that is subject to the easement (easement area) "as a driveway for ingress and egress to and from the public highway known as Bethany Mountain Road, Cheshire, Connecticut, as well as for the installation, maintenance, repair and replacement of utility service, including but not

---

[1] In the interest of simplicity, we refer to Lior Israel and Perla Israel individually by their first names. We refer to Lior and Perla collectively as the defendants.

limited to a 'CL&P Easement' . . . ." The agreement
further provides that "no building, structure, or other
permanent improvement or obstruction shall be located
upon the . . . [e]asement [a]rea," and that, "[i]n the
event any owner of [the] lots fail[s] to agree when
repairs to [the easement area] are necessary (example:
repaving or re-graveling), the majority vote of said lot
owners shall control as to whether the repairs shall
be made."

In late 2019, the plaintiff constructed a fence near
the boundary line between the plaintiff's property and
the easement area. Following the installation of the
fence, the defendants purchased the property subject
to the easement. After acquiring title to the property
subject to the easement, the defendants met with the
neighboring property owners who were permitted to
use the easement under the terms of the agreement.
The defendants wanted to discuss their desire to pro-
ceed with construction projects within the easement
area. The neighboring property owners did not consent
to the defendants' proposals and indicated that the
defendants' proposed projects were largely if not
entirely prohibited by the agreement. Despite the lack of
consent, the defendants proceeded to construct stone
walls, pave the driveway, and install curbing in the
easement area during the winter and spring of 2023.
In the course of those activities in March, 2023, the
defendants removed the plaintiff's fence. Stone walls
and curbing now inhibit access to the rear portion of
the plaintiff's property.

In April, 2023, the plaintiff commenced the present
action. The complaint alleged in count one that the
defendants committed trespass by wilfully and inten-
tionally causing the removal of the plaintiff's fence,
thereby causing damage to the plaintiff, and in count
two that the defendants breached the terms of the agree-
ment by installing the stone walls and curbing within

the easement area, without the consent of the parties to the agreement and preventing access to the rear of the plaintiff's property. In both counts, the plaintiff sought permanent injunctive relief. The defendants filed a joint answer and special defenses to the complaint.

Following a trial to the court, *Frechette, J.*, the trial court issued a memorandum of decision in May, 2024, rendering judgment in favor of the plaintiff on both counts of the complaint. The court concluded that "[j]udgment shall enter in favor of the plaintiff in the amount of $45,400, which includes awards for property damage of $10,400 and annoyance and discomfort damages of $35,000; in addition to an award of reasonable attorney's fees, the amount of which shall be determined following a hearing addressing same. Additionally, the defendants are ordered to restore the easement area to its prior condition . . . by removing the curbing and stone walls they installed in the easement area, near the rear of the plaintiff's property . . . . The removal of such curbing and the stone walls shall occur within forty-five (45) days of the issuance of this decision." This appeal followed. Additional facts will be set forth as necessary.

I

The defendants first claim on appeal that the court erred in determining that the plaintiff sustained his burden of proving that the defendants trespassed on the plaintiff's property when they ordered the removal of the plaintiff's fence. Specifically, the defendants contend that the trial court improperly found that the plaintiff's fence was located on the plaintiff's property, as the defendants maintain that the fence was located in the easement area. We disagree.

We begin by setting forth the standard of review and fundamental principles of law governing the defendants' claim. "Our review of questions of fact is limited

to the determination of whether the findings were clearly erroneous. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses." (Internal quotation marks omitted.) *Wilcox* v. *Ferraina*, 100 Conn. App. 541, 549–50, 920 A.2d 316 (2007). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings." (Internal quotation marks omitted.) *Gaughan* v. *Higgins*, 186 Conn. App. 618, 626, 200 A.3d 1161 (2018), cert. denied, 330 Conn. 968, 200 A.3d 188 (2019), and cert. denied, 330 Conn. 968, 200 A.3d 699 (2019).

"It is well established that [t]he essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." (Internal quotation marks omitted.) Id., 629. "[S]ince trespass is a possessory action, it is incumbent on the plaintiff to prove possession, actual or constructive, in order to prevail. . . . Actual possession requires the plaintiff to demonstrate his exclusive possession and control of the land; constructive possession requires proof that the plaintiff was the owner of the land and that no one else had possession." (Citation omitted; internal quotation marks omitted.) *Boyne* v. *Glastonbury*, 110 Conn. App. 591, 601, 955 A.2d 645, cert. denied, 289 Conn. 947, 959 A.2d 1011 (2008).

The following additional facts are relevant to the defendants' claim. After the plaintiff acquired his property in 2019, Shaun Slocum, the previous owner of the

defendants' property, hired a licensed land surveying firm to stake the property line shared between the plaintiff's property and his own property. The plaintiff testified that Slocum ordered the survey "[w]hen he was making preparations to sell his property." The land surveying firm designated the property line with markers connected by string.

While the markers and string remained in place, the plaintiff hired a contractor to construct a fence along a portion of the marked property line, within his own property. The plaintiff entered into evidence a photograph of the rear portion of the plaintiff's property showing the staked boundary line and the installation of posts to be used in building the fence. The photograph illustrates that the position of the fence, as per the boundary staking, was within the plaintiff's property. The fence was completed around November, 2019. At the time, Slocum did not dispute the location of the fence. Evidence presented at trial, including testimony that Slocum "passed up and down the driveway multiple times a day," indicated that Slocum was aware of the fence's location. The fence was intact when the defendants acquired title to their property in April, 2022.

In February, 2023, Lior contacted a licensed surveyor, Kevin Crowley,[2] who provided Lior with a map that was recorded on the Cheshire Land Records. The map indicated the boundary line of the plaintiff's property, the defendants' property, and the easement area. Lior did not contract with a licensed surveyor to conduct a survey. On or about February 21, 2023, the plaintiff received a letter from the defendants. In the letter, the defendants claimed, inter alia, that the plaintiff "constructed a fence within the easement area along the

---

[2] The defendants did not call Crowley as a witness; the plaintiff discovered that Lior had hired Crowley, and the plaintiff called Crowley as a witness at trial.

driveway"; "demand[ed] that [the plaintiff] remove said fence immediately and refrain from the construction of any permanent improvement or structure within the easement area"; and stated that, "[i]n the event that [the plaintiff] does not remove the fence within fifteen (15) days from the date of this correspondence, [the defendants] will initiate legal action to compel its removal."

The plaintiff did not remove the fence. The defendants did not commence litigation. Instead, on March 17, 2023, the defendants directed employees of Lior Excavating, LLC (Lior Excavating), to remove a portion of the plaintiff's fence. Without notifying the plaintiff, Lior and Lior Excavating entered the area where the fence was located and started dismantling the fence with power tools and an excavator. At this time, the plaintiff stated to Lior that the fence was located on the plaintiff's property. The plaintiff asked that Lior and Lior Excavating stop removing the fence and called the police, who, upon arrival, recommended to Lior that he cease removal of the fence until a survey could be performed.[3] Ignoring that advice, Lior and Lior Excavating continued removing the fence until the portion of

---

[3] "One of the responding officers stated to [Lior]: '[T]he easiest person to talk this with would be a surveyor. Whether he [i.e., the plaintiff] pays for it, you pay for it. It would be good, it would be fast. Listen, it would be best if work ceases until he can get one out here . . . . [J]ust know that if discovery of this come and say, "Hey, this was actually in his property." You're going to put all that back for him,' to which [Lior] responded: 'I don't care.' . . . The other responding officer stated to [Lior]: '[I]f you happen to be wrong and you're messing with people's property, you're going to be held liable for that. That's what they do,' to which [Lior] responded: 'I understand.' . . . Moreover, during this time, the plaintiff stated to [Lior]: 'I'm going to tell you in the presence of these officers, if you're taking this [fence] down, I'm going to sue for damages. Let's resolve this with a survey. If you keep taking this down, it's going to get worse,' to which [Lior] responded that he would pay damages if he was wrong: 'If he [i.e., the plaintiff] says, and he can prove that this is his property, he can sue me. [I'll] pay whatever it is.' " (Citations omitted.)

the fence that the defendants believed encroached into the easement area was completely taken down.

On April 6, 2023, two days after the present action commenced, Lior returned to the area and directed Lior Excavating to use heavy machinery and shovels to conceal the fence post holes. Around April 18, 2023, the plaintiff hired a licensed surveyor, Douglas Lindquist, to stake the property line between the plaintiff's and the defendants' properties and to determine the location of the fence that had been removed by Lior Excavating. Lindquist was unable to determine the fence's location due to Lior Excavating's concealment of the fence post holes with earth moving equipment.

The court concluded "that the plaintiff held an exclusive ownership interest in the disputed area at the time the defendants and/or those ordered by the defendants entered the disputed area and removed the plaintiff's fence." "The court notes that there is no dispute that the plaintiff is the owner of the property located at 780 Bethany Mountain Road . . . . The court credits the plaintiff's testimony that shortly after he acquired title to the 780 Bethany Mountain Road property in 2019— over two years before the defendants acquired title to the 776 Bethany Mountain Road property—the prior and then owner of the defendants' property, [Slocum], hired a licensed civil engineering and land surveying firm to stake the boundary of the 776 Bethany Mountain Road property in anticipation of selling the property. Moreover, the court credits the plaintiff's testimony that in 2019 he hired a contractor to construct a fence to enclose the rear of his property, which abuts the 776 Bethany Mountain Road property and the easement area; that the plaintiff instructed the contractor to wait until the surveying firm hired by [Slocum] completed staking the boundary of the 776 Bethany Mountain Road property before beginning constructing the fence; that

in accordance with the plaintiff's instruction, the contractor constructed the fence only after the boundary staking was complete; and that the contactor relied on such professional boundary staking to ensure that the fence was built entirely on the plaintiff's property. The plaintiff's exhibits . . . confirm the plaintiff's testimony that the fence at issue was built on the plaintiff's property, as [one exhibit] is a picture capturing a moment during the early stages of the fence's construction, and illustrating that the fence was built on [the] side of the boundary staking delineating the plaintiff's property; and [two other exhibits] are certain surveyors' maps indicating the boundary lines of the plaintiff's property, the defendants' property, and the location of the easement area. Additionally, it is telling to the court that the plaintiff's fence was erected before the defendants purchased their property and was seen by and tacitly approved by the defendants' predecessor in title, [Slocum]. Further, the court draws an adverse inference against the defendants as a result of their spoliation of evidence by removing the plaintiff's fence and then obscuring the area where the fence once stood by covering the area with earth. . . . Furthermore, the court notes that the defendant, Lior Israel, admitted at trial that, while he had spoken with a licensed surveyor, Kevin Crowley, he did not engage the services of [Crowley], or any other licensed surveyor, for the purpose of having a survey conducted or to discern whether the plaintiff's fence was located on the defendants' property or in the easement area. The court finds Lior Israel's personally performed, amateur attempt at determining the property lines as well as his testimony concerning whether the plaintiff's fence was built in the easement area to be self-serving and not credible. [Lior] is not a licensed surveyor. Moreover, [Crowley], who is a licensed surveyor, and who was called as a witness by the plaintiff, credibly testified at trial that for a land

survey to be reliable, it would need to be performed by or under the supervision [of] a licensed surveyor—neither of which apply to what occurred here." (Citation omitted; emphasis omitted; footnotes omitted.)

On appeal, the defendants argue that "the weight of the evidence presented at trial clearly showed that the fence and garden fence enclosure constructed by the plaintiff encroached approximately three feet onto the defendants' property and [easement area]." The defendants do not challenge the trial court's findings as to the evidence supporting the plaintiff's proof of all the other elements of trespass.

After a thorough review of the record, we are not left with a definite and firm conviction that a mistake has been committed by the trial court regarding the location of the fence and thus we agree with the court's finding that the plaintiff possessed the disputed area. The defendants contend that the court's reliance on the plaintiff's testimony with respect to Slocum's survey of the property boundary was improper because the plaintiff did not hire his own surveyor prior to installing his fence. We disagree with this contention, however, because the question of the credibility of the plaintiff and the weight to assign his testimony was one for the trier of fact, not this court. See, e.g., *Gaughan* v. *Higgins*, supra, 186 Conn. App. 626. Because the court's finding as to the location of the fence has support in the record and we are not left with a definite and firm conviction that a mistake has been committed, it is not clearly erroneous. Accordingly, we conclude that the court's conclusion that the defendants trespassed on the plaintiff's property is not clearly erroneous.

## II

The defendants also claim that the court erred in issuing a permanent injunction with respect to the plaintiff's breach of contract claim. Specifically, the defendants assert that the plaintiff failed to establish the

legal requirements necessary for the court to order the injunctive relief of removal of the curbing and stone walls installed by the defendants near the rear of the plaintiff's property. We disagree.

We begin with our standard of review and relevant legal principles. "The granting of an injunction rests within the sound discretion of the trial court and [i]n exercising its discretion, the court . . . may consider and balance the injury complained of with that which will result from interference by injunction. . . . The relief granted must be compatible with the equities of the case. . . . The action of the trial court will not be disturbed unless it constitutes an abuse of discretion." (Internal quotation marks omitted.) *Waterbury* v. *Phoenix Soil, LLC*, 128 Conn. App. 619, 627–28, 20 A.3d 1 (2011).

A covenant "may be enforced by injunction without a showing that violation of the covenant will cause harm to the plaintiff, so long as such relief is not inequitable. . . . It is well settled that the owner of an easement is entitled to relief upon a showing that he will be disturbed or obstructed in the exercise of his right." (Citations omitted; internal quotation marks omitted.) *Expressway Associates II* v. *Friendly Ice Cream Corp. of Connecticut*, 22 Conn. App. 124, 130, 576 A.2d 575 (1990), rev'd in part on other grounds, 218 Conn. 474, 590 A.2d 431 (1991); see also *Hartford Electric Light Co.* v. *Levitz*, 173 Conn. 15, 22, 376 A.2d 381 (1977); *Waterbury* v. *Phoenix Soil, LLC*, supra, 128 Conn. App. 628 n.7.

The following facts are relevant to the defendants' claim. In January, 2019, the agreement was executed by and entered between the predecessors in title to the plaintiff's property, the defendants' property, and the neighboring property. As successors in title, the plaintiff, the defendants, and the neighboring property owners (collectively, current lot owners) are subject to the

terms and conditions of the agreement. The agreement provides the following relevant background information: "[T]he parties are desirous of entering into an Agreement binding their heirs, successors, and assigns of the parties hereto for the maintenance and repair of said easement area" and "a portion of said Lot 2 [has] been used, and continues to be used, by the owners of said Lot 1 and Lot 3 as a driveway for ingress and egress to and from the public highway known as Bethany Mountain Road . . . as well as for the installation, maintenance, repair and replacement of utility service, including but not limited to a 'CL&P Easement' as shown on said map . . . ."[4]

The following paragraphs of the agreement are relevant to the defendants' claim. Paragraph 2 provides: "In the event any owner of said lots fail to agree when repairs to [the easement area] are necessary (example: repaving or re-graveling), the majority vote of said lot owners shall control as to whether the repairs shall be made. Any owner or owners of any one (1) lot shall constitute one (1) vote." Paragraph 5 provides in relevant part: "The Parties agree that no building, structure or other permanent improvement or obstruction shall be located upon the above described Easement Area. . . . As used herein, a driveway and/or utility services shall not be considered to be permanent improvements or obstructions and the parties reserve the right to maintain, repair, replace, [relocate] and improve the said driveway and utility services." Paragraph 11 provides in relevant part: "This Agreement and the conditions herein contained shall be deemed covenants running with the land and shall inure to the benefit and be binding upon the now and future owners of said lots

---

[4] The map displays the following: Lot 1, the plaintiff's property at 780 Bethany Mountain Road; Lot 2, the defendants' property at 776 Bethany Mountain Road; Lot 3, the neighboring property at 770 Bethany Mountain Road; and a Private Accessway, the easement area at issue.

and their respective heirs, legal representative, successors and assigns of all subsequent owners of said lots . . . ."

The current lot owners held two meetings in 2022 to discuss the properties and easement area. During both meetings, the defendants asserted their desire to, inter alia, complete certain construction projects, including building stone walls and installing curbing, within the easement area. The owners of the other lots did not consent to those proposed construction projects; the defendants did not obtain a majority vote of lot owners in favor of commencing those projects. However, at the beginning of 2023, the defendants engaged in several construction projects in the easement area. In January, 2023, the defendants constructed stone walls in the easement area. The defendants then paved a driveway in the easement area in March, 2023, and installed concrete curbing in the easement area on both sides of that driveway in April, 2023.

The stone walls and curbing installed toward the rear of the plaintiff's property inhibit access to that portion of the plaintiff's property. Specifically, those installations keep the plaintiff and others, including tradesmen, from entering the plaintiff's property from the easement area to perform work. Furthermore, the plaintiff will be required to relocate propane lines should the curbing remain.

The court found that "[i]t is undisputed that there exists a tract of land located on the defendants' property that is subject to an easement that provides certain privileges to the owners of the 770 and 780 Bethany Mountain Road properties. . . . The privilege at issue here is the plaintiff's right, as the owner of the 780 Bethany Mountain Road property, to use that portion of the defendants' property that is subject to the easement for purposes of ingress and egress as well as for

the installation, maintenance, repair, and replacement of utility services. . . .

"From the evidence submitted at trial, and taking into account the court's evaluation of the credibility of the witnesses, the court concludes that the plaintiff has met his burden of proof and is therefore entitled to the permanent injunctive relief he seeks against the defendants, insofar as he seeks the removal of the curbing and the stone walls at issue near the rear of his property. . . . [T]he curbing and stone walls installed in the easement area by the defendants constitute permanent improvements, and, thus, the defendants violated the accessway agreement by installing such. Moreover, even if the curbing and stone walls constitute repairs, the defendants will have violated the accessway agreement by installing such because the defendants made such repairs without having first obtained a majority vote of the lot owners in favor of making the repairs. Further . . . the plaintiff testified, and it is hereby found, that the stone walls and curbing installed by the defendants in the easement area near the rear of the plaintiff's property has and will continue to inhibit the plaintiff and others, including tradesmen, such as repair and maintenance, who have, in the past, entered the plaintiff's property from the easement area, from accessing the rear of the plaintiff's property . . . and further that, if the curbing remains, it will require the plaintiff to relocate propane lines from the rear of his property closer to his driveway. The court notes that the paved driveway is in place and is not affected by this injunction, nor are the stone walls constructed near the entrance to the parties' shared driveway." (Citations omitted.)

In support of their claim, the defendants argue that the plaintiff "failed to present any evidence at trial necessary to establish that he will suffer irreparable harm which cannot be compensated by an adequate remedy

at law, namely, money damages"; "failed to allege suffi-
cient facts at trial to even establish that he has been
harmed in any way in that the plaintiff has had access
over the [easement area] to and from the private drive-
way on his property at all times during the performance
of the curb installation and/or stone walls by the defen-
dants"; and "reconstructed a permanent fence along the
entire northerly property line of the [plaintiff's property]
adjacent to the [easement area] during the pendency of
this case which precluded any access to the [plaintiff's
property] from the [easement area] along the northerly
property line of the [plaintiff's property]."

We conclude that the court did not abuse its discre-
tion in ordering the defendants to restore the easement
area to its prior condition by removing the curbing and
stone walls installed in the easement area. Although
the defendants argue that the plaintiff failed to show
irreparable harm and lack of an adequate remedy at
law, the defendants do not dispute the court's findings
with respect to the terms of the parties' agreement. The
court, hearing all the evidence, "conclude[d] that the
plaintiff has sustained his burden of proving that the
defendants breach[ed] the [agreement]." Because the
plaintiff is an owner of the easement and has been
disturbed in the exercise of his right,[5] his covenant
"may be enforced by injunction without a showing that
violation of the covenant will cause harm to the plaintiff,
so long as such relief is not inequitable."[6] (Internal quo-
tation marks omitted.) *Expressway Associates II* v.

[5] The agreement provides the following right: access to the rear of the
plaintiff's property by utility services and owners of the plaintiff's property.
As the trial court found, the curbing and stone walls installed in the easement
area, near the rear portion of the plaintiff's property, disturb the plaintiff's
exercise of this right by inhibiting such access.

[6] The defendants also contend that "[t]he equities of this case simply do
not tip in favor of the plaintiff" and that "[t]he cost to the defendants of
removing the curbing in the [easement area] would be considerable . . . ."
However, the defendants' brief lacks any relevant analysis on this subject,
and we accordingly conclude that the defendants' argument is inadequately
briefed and decline to consider it. "We repeatedly have stated that [w]e are

*Friendly Ice Cream Corp. of Connecticut*, supra, 22 Conn. App. 130. On the basis of the foregoing, we conclude that the court did not abuse its discretion in ordering injunctive relief in favor of the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.

———————————

not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [F]or this court judiciously and efficiently to consider claims of error raised on appeal . . . the parties must clearly and fully set forth their arguments in their briefs. . . . The parties may not merely cite a legal principle without analyzing the relationship between the facts of the case and the law cited." (Internal quotation marks omitted.) *Hamer* v. *Byrne*, 231 Conn. App. 53, 64 n.3, 333 A.3d 158, cert. denied, 351 Conn. 930, 334 A.3d 482 (2025), and cert. denied, 351 Conn. 930, 334 A.3d 483 (2025).