WANDA I. HAR *v.* DOROTHY S. BOREIKO ET AL.
(AC 29664)

Flynn, C. J., and Lavine and Peters, Js.

Argued October 27, 2009—officially released January 12, 2010

*Wanda I. Har*, pro se, the appellant (plaintiff).

*Robert T. Harrington*, for the appellee (named defendant).

*Frederic S. Ury*, with whom, on the brief, was *Deborah M. Garskof*, for the appellee (defendant Karen A. Fitzmaurice).

### Opinion

LAVINE, J. This quiet title action concerns a boundary common to three parcels of land in Milford. The pro se plaintiff, Wanda I. Har,[1] appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the defendants, Dorothy S. Boreiko and Karen

---

[1] Har also is known as Wanda I. Febus. At trial, Har was represented by counsel.

A. Fitzmaurice. On appeal, the plaintiff claims that the court's findings with respect to her quiet title and adverse possession claims are clearly erroneous.[2] We disagree and, thus, affirm the judgment of the trial court.

The crux of the parties' dispute concerns the location of the eastern boundary of the plaintiff's residence at 127 Melba Street. The plaintiff acquired title to 127 Melba Street from her husband, Dean Har, and herself, by means of a quitclaim deed dated May 8, 2003. The plaintiff commenced this action in December, 2005, and in her amended, four count complaint, alleged that she is the owner of a parcel of land known as 127 Melba Street.[3] The plaintiff also alleged that Boreiko is the owner of 55 Pelham Street (Boreiko parcel) that abuts the rear of 127 Melba Street. In addition, the plaintiff alleged that Fitzmaurice is the owner of 53 Pelham Street (Fitzmaurice parcel) that also abuts the rear of 127 Melba Street. The plaintiff sought to quiet title to an area of land contiguous to all of the parcels and to which all of the parties claimed title (disputed area). She alleged that she held title to the disputed area by

[2] On appeal, the plaintiff also claimed that the court's findings with respect to marketable record title; see General Statutes § 47-33b et seq.; were clearly erroneous. The plaintiff failed to allege a claim regarding marketable record title, and the court did not consider it. We therefore decline to review this claim. See, e.g., *Flater* v. *Grace*, 291 Conn. 410, 420, 969 A.2d 157 (2009). For the same reason, we decline to review the plaintiff's claims that the court misapplied General Statutes § 47-33e and that she was entitled to prevail pursuant to the doctrine of acquiescence.

The plaintiff also claims, with respect to the defendants' expert witness, Lawrence W. Fisher, that the court abused its discretion by failing to conduct a *Porter* hearing. See *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). At oral argument, the plaintiff conceded that at trial she did not object to Fisher's testimony and did not request a *Porter* hearing. We decline to review the claim, as this court does not review claims that are raised for the first time on appeal. See *Seligson* v. *Brower*, 109 Conn. App. 749, 755 n.5, 952 A.2d 1274 (2008).

[3] The plaintiff also alleged the metes and bounds description of 127 Melba Street.

virtue of adverse possession and that the defendants were trespassers. The plaintiff further sought a declaratory judgment as to the boundary of the disputed area.

Each of the defendants denied the material allegations of the plaintiff's complaint. In a special defense, Fitzmaurice alleged that she had acquired title to the Fitzmaurice parcel pursuant to a general warranty deed recorded in the Milford land records on June 21, 1984, and that she had acquired title in the disputed area by adverse possession. She also claimed ownership of the Fitzmaurice parcel pursuant to General Statutes § 52-575. Boreiko filed a four count counterclaim with respect to the disputed area, alleging quiet title, declaratory judgment, trespass and adverse possession.

The court made the following findings of fact in its memorandum of decision issued on February 11, 2008. Robert Sozanski (Sozanski) and his mother, Anna Sozanski,[4] purchased 127 Melba Street from Estelle Gainer on July 14, 1975. At the time, Gainer had Lawrence C. Williams, a surveyor, prepare a survey and map of 127 Melba Street (Williams map). Sozanski did not live at the premises until 1977 or 1978 and remained there until 1999. At the time that he moved into the premises, the hedge that he observed in 1975 had been cut back by Boreiko's late husband, Benjamin Boreiko, to where it was located at the time Sozanski sold the premises to Dean Har. Sozanski did not object to the cutting of the hedge, because he did not own it. While he was in possession of 127 Melba Street, Sozanski believed that Boreiko owned the land between the deed line and the hedge and the land near a mimosa tree.

Dean Har acquired title to 127 Melba Street from Sozanski via a warranty deed dated April 29, 1999. Sozanski had met with the plaintiff and Dean Har

---

[4] Sozanski's mother subsequently quitclaimed her interest in the premises to him on July 24, 1980.

approximately five times and showed Dean Har the boundaries of the property, explaining that the eastern boundary ran from a drill hole in the southwest corner ninety feet to approximately the Mimosa tree and then "jogs to a pipe" for 61.5 feet. Sozanski gave Dean Har the Williams map. Sozanski never represented to the plaintiff and Dean Har that he owned an area identified by "occupation lines" shown on the Williams map.

From 1952, when Boreiko and her husband purchased the Boreiko parcel, until 2002, the various owners of the subject parcels were on friendly terms. The court found that prior to 2002, none of the parties acted in a manner that indicated that Boreiko was "attempting to visibly and exclusively possess the disputed area under a claim of right with the intent to use the property as [her] own without the consent of the owner." After the Har family took possession of 127 Melba Street, it did not maintain the hedge or the lawn in the disputed area until 2002, when a disagreement arose among the parties.

In 2002, the plaintiff and Dean Har replaced a seven foot wooden seawall with a twelve foot to thirteen foot concrete block wall with a fence atop it.[5] Boreiko asked the plaintiff and Dean Har not to put a fence on the seawall.[6] The use and ownership of the disputed area became an issue in 2002, when the plaintiff and Dean Har made claims to land that Boreiko and Fitzmaurice believed that they owned.[7] Neither Boreiko nor Fitzmaurice knew the area was subject to dispute, however,

[5] The defendants asked that the Milford zoning department find the fence to be a violation of the zoning code. The request resulted in years of conversations with officials on the zoning board and the zoning board of appeals.

[6] At trial, Boreiko testified that she objected to the fence on the wall because she believed that the seawall partially was on her property. The court found Boreiko's testimony problematic for the reason that it did not seem credible to object to the erection of a fence partially on her property, but not to object to the construction of the seawall partially on her property.

[7] The disputed area is a triangular shaped piece of land at the intersection of the parties' parcels.

until February, 2006, when Lawrence W. Fisher, a surveyor whom they had retained, showed it to them on a map. Although they claimed the area by virtue of adverse possession, neither of the defendants has ever enclosed or otherwise made an effort to keep anyone, including the plaintiff and her family, out of the area.

The court further found that in 1897, a trolley right-of-way ran through what is now the defendants' land.[8] The southern boundary of the right-of-way was established at a distance of fifteen feet from the center of the original, single trolley track. The southern boundary of the trolley right-of-way constituted 120 feet of the easterly boundary of the plaintiff's parcel. At no time had the land encompassing the trolley right-of-way been owned by the plaintiff or her predecessors in title. In 1901, a second trolley track was added. The original thirty foot right-of-way was widened by eighteen inches on the north side of the right-of-way; the centerline of the second track was ten feet to the north of the centerline of the original, single track. The addition of the second track had no effect on the location of the southerly boundary of the thirty foot right-of-way established in 1897.

The court also found that the parcels of land owned by the parties came out of subdivisions created in 1900 and 1904. Several deeds and surveys involving the plaintiff's parcel were prepared subsequent to the creation of the plaintiff's parcel and the construction of the second trolley track. Those subsequent surveys and deeds incorrectly located the southern boundary of the trolley right-of-way because they measured twenty feet from the centerline of the second track rather than fifteen feet from the centerline of the original, single track. The effect of the error was to interpret the southern

---

[8] At trial, the right-of-way apparently was referred to as part of a trolley track. It was owned by the Milford Street Railway Company.

boundary of the trolley right-of-way five feet farther to the north than where it was established in 1897. The error concerning the southern boundary of the trolley right-of-way was perpetuated over the years, including by Williams and the plaintiff's surveyor, Michael O'Bymachow. Fisher, however, discovered the error when he resurveyed the parties' parcels. Fisher found that the southern boundary of the trolley right-of-way is a common boundary line with the Fitzmaurice parcel, not the hedge line as the plaintiff claims. Moreover, the court found that only a short section of the trolley right-of-way divides 127 Melba Street from the Fitzmaurice parcel and that the southern boundary of the trolley right-of-way is not a common boundary with the Boreiko parcel.[9]

The court concluded that the plaintiff failed to meet her burden of proof as to all four counts of her amended complaint and rendered judgment in favor of the defendants. The court also concluded that as to counts one and two of her counterclaim, Boreiko met the burden of proof concerning the boundaries of the real property in question pursuant to General Statutes §§ 47-31 and 52-29.[10] The court declared that the plaintiff has no

[9] The court found that the Williams and O'Bymachow maps are not accurate as to the location of the 120 foot arch southern boundary of the trolley right-of-way, or the 61.5 foot long portion of the common boundary between the 127 Melba Street and the defendants' parcels. The 61.5 foot boundary needs to be measured from the southwest corner of lot 33, not from the point where Williams measured it, which is nowhere near the southwest corner. The proper location of each of those lines is critical to establishing the correct location of the common boundaries between the parties' parcels. Relying on a hedge as a boundary line would be appropriate only if the deed stated that the boundary was intended to run along a hedge. There are no deeds in the chain of title that reference any hedge between the parties' parcels or describe the same as a boundary line.

[10] In response to the plaintiff's motion for articulation, the court stated that the judgment rendered only affects the disputed area and does not affect any property or any portion of property that was not the subject of the litigation.

interest in the Boreiko parcel as alleged in the fourth count of the counterclaim. The court found that Boreiko failed to meet her burden of proof to show that the plaintiff trespassed on the Boreiko parcel and that Boreiko had not proved adverse possession of the disputed area. Judgment was rendered in favor of the plaintiff as to counts three and four of the counterclaim. The court also found that Fitzmaurice failed to prove her special defense of adverse possession of the disputed area by clear and convincing proof and rendered judgment in favor of the plaintiff.[11] Additional facts will be set out as needed.

"An action to quiet title is one quasi in rem, and it lies against those who, at the time it is instituted, are the present claimants to the land under the instrument which creates the cloud." *Lake Garda Improvement Assn.* v. *Battistoni,* 155 Conn. 287, 294, 231 A.2d 276 (1967). When a party seeks to quiet title pursuant to § 47-31, the "court should first determine in which party record title lies, and then determine whether adverse possession has divested the record owner of title. . . . The initial question is whether record title is in one party or the other and, if so, the question becomes whether the record owner was divested of title by clear and positive proof of adverse possession of the other." (Citation omitted.) *Clark* v. *Drska,* 1 Conn. App. 481, 488–89, 473 A.2d 325 (1984).

I

The plaintiff claims that the court's findings with respect to her quiet title action, alleged pursuant to § 47-31, are clearly erroneous. We disagree.

General Statutes § 47-31 provides in relevant part: "(a) An action may be brought by any person claiming

[11] Neither Boreiko nor Fitzmaurice filed an appeal from the court's judgment.

title to, or any interest in, real . . . property . . . against any person who may claim to own the property, or any part of it . . . adverse to the plaintiff . . . to clear up all doubts and disputes and to quiet and settle the title to the property. . . . (f) The court shall hear the several claims and determine the rights of the parties, whether derived from deeds, wills or other instruments or sources of title, and may determine the construction of the same, and render judgment determining the questions and disputes and quieting and settling the title to the property." Under § 47-31, the claim for relief calls "for a full determination of the rights of the parties in the land." *Lake Garda Improvement Assn.* v. *Battistoni,* supra, 155 Conn. 293. To prevail, the plaintiff must do so on the strength of her own title, not on the weakness of the defendants'; see id.; and by the preponderance of the evidence. *Remington Investments, Inc.* v. *National Properties, Inc.,* 49 Conn. App. 789, 797, 716 A.2d 141 (1998).

"[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) Id. "The credibility of the witnesses and the weight to be accorded to their testimony is for the trier of fact. . . . [An appellate] court does not try issues of fact or pass upon the credibility of witnesses." (Internal quotation marks omitted.) *Wasniewski* v. *Quick & Reilly, Inc.,* 292 Conn. 98, 103, 971 A.2d 8 (2009).

"In determining a boundary line in a deed, the law is clear that the description in the deed, if clear and unambiguous, must be given effect. In such a case, there is no room for construction. The inquiry is not the intent of the parties but the intent which is expressed in the deed. . . . Where the deed is ambiguous, however, the

intention of the parties is a decisive question of fact. . . . In ascertaining the intention of the parties, it was proper for the trial court to consider the surrounding circumstances." (Citations omitted; internal quotation marks omitted.) *Koennicke* v. *Maiorano*, 43 Conn. App. 1, 10, 682 A.2d 1046 (1996).

In this case, the court had before it a large number of exhibits, including various deeds, maps and photographs. It heard testimony from the plaintiff, Fitzmaurice, O'Bymachow, Fisher and others. On the basis of our review of the court's memorandum of decision, we conclude that the key evidence with respect to the quiet title claims was the testimony of the parties' expert witnesses.

"[W]here the testimony of witnesses as to the location of the land described in deeds is in conflict, it becomes a question of fact for the determination of the court which may rely upon the opinions of experts to resolve the problem and it is the court's duty to accept that testimony or evidence which appears more credible." *Feuer* v. *Henderson*, 181 Conn. 454, 458, 435 A.2d 1011 (1980). "In determining credibility of the experts, the court as the trier of fact could believe all, some or none of the testimony." (Internal quotation marks omitted.) *U.S. Bank National Assn.* v. *Palmer*, 88 Conn. App. 330, 338–39, 869 A.2d 666 (2005).

The court found that Fisher was a well qualified surveyor and a credible and persuasive witness.[12] On the

---

[12] With respect to O'Bymachow, the court found that in 2003, Dean Har contacted him and told O'Bymachow that there was a discrepancy in the deed and that the adjoining landowner was claiming property. Moreover, O'Bymachow had been a patient of Dean Har, a physician, since 2001.

The 2003 dependent survey prepared by O'Bymachow contains notations stating: "Type of survey performed is a Limited Property/Boundary Survey and is intended to be Existing Building Location Survey" and "Boundary determination is based upon a Dependent Resurvey." The court found that although the O'Bymachow survey purports to be a resurvey of the Williams map, the boundaries of 127 Melba Street shown on the O'Bymachow map are considerably different and confer more land to the plaintiff than that

basis of our review of the record, we conclude that the evidence supports the court's finding with respect to Fisher's qualifications. Moreover, credibility determinations are beyond the reach of an appellate court. See *Wasniewski* v. *Quick & Reilly, Inc.*, supra, 292 Conn. 103.

The court made the following specific findings of fact with regard to Fisher's testimony. Fisher has been a licensed surveyor in Connecticut since 1979. The defendants did not know Fisher prior to retaining him to survey their properties in 2004. In undertaking his assignment, Fisher performed a detailed title search of the parties' parcels, utilizing maps and notes that were recorded in the land records, as well as unrecorded maps and notes that he obtained from the files of other land surveyors.[13]

Fisher found that the Fitzmaurice parcel is made up of two pieces. The first piece was sold off the Nettleton map. Title to the second piece goes back to a conveyance from an individual named Landine. The second piece abuts the first and runs back to 127 Melba Street. The Boreiko parcel also is made up of two pieces. The first piece was sold off the Nettleton map, and title to the second piece runs back to a conveyance from Landine. The second piece of the Boreiko parcel abuts the first and runs along the boundary of the plaintiff's parcel to Long Island Sound.

Fisher performed a resurvey of the defendants' properties, which the court found is the proper way to determine the boundaries.[14] At the time of trial, the survey map that Fisher prepared of the parties' parcels was

shown on the Williams map. O'Bymachow found that the plaintiff's parcel should include land running to the occupation lines shown on the Williams map, even though that land is not contained in the plaintiff's deed.

[13] None of Fisher's findings was based on adverse possession.

[14] O'Bymachow performed a dependent resurvey, which the court found is not the proper survey to determine disputed boundaries.

entered into evidence as defendants' exhibit 121. At trial, Fisher outlined, on exhibit 121, in different colors, the boundary between 127 Melba Street and the defendants' parcels, the boundary found by Williams and the boundary found by O'Bymachow. Importantly, the court found that there is no deed in the plaintiff's chain of title that describes 127 Melba Street as it is shown on the survey prepared by O'Bymachow.

Pursuant to the defendants' exhibit 122, the court found what happens to the various deed lines if they are extended down Melba Street. The only deed line that lines up with a 1948 pipe on Melba Street is the Fisher survey. Both the Williams and the O'Bymachow survey lines miss this pipe and fail to conform to the actual street line. Those two surveys significantly misplace the Melba Street line and run it into the front yards of neighboring properties.

On the basis of the court's findings and our review of the record, we conclude that the court properly found the boundary lines of the disputed area and quieted title in the defendants. The court's findings are not clearly erroneous.

II

The plaintiff's second claim is that the court's factual findings with respect to her claim of adverse possession are clearly erroneous. We disagree.

"[T]o establish title by adverse possession, the claimant must oust an owner of possession and keep such owner out without interruption for fifteen years by an open, visible and exclusive possession under a claim of right with the intent to use the property as his [or her] own and without the consent of the owner. . . . A finding of [a]dverse possession is not to be made out by inference, but by clear and positive proof. . . . [C]lear and convincing proof denotes a degree of belief

that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater than the probability that they are false or do not exist. . . . The burden of proof is on the party claiming adverse possession. . . .

"Despite [this] exacting standard, our scope of review is limited. . . . Because adverse possession is a question of fact for the trier . . . the court's findings as to this claim are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . . A trial court's findings in an adverse possession case, if supported by sufficient evidence, are binding on a reviewing court . . . ." (Citations omitted; internal quotation marks omitted.) *Eberhart* v. *Meadow Haven, Inc.*, 111 Conn. App. 636, 640–41, 960 A.2d 1083 (2008).

The court found that the plaintiff had not owned 127 Melba Street for fifteen years. The plaintiff contended, however, that she owns the disputed area by adverse possession pursuant to the concept of tacking.

"It is sufficient if there is an adverse possession continued uninterruptedly for fifteen years whether by one or more persons. . . . [T]he possession [however] must be connected and continuous . . . ." (Citation

omitted; internal quotation marks omitted.) *Durkin Village Plainville, LLC* v. *Cunningham*, 97 Conn. App. 640, 650–51, 905 A.2d 1256 (2006). In this case, however, the court found that Sozanski, the plaintiff's predecessor in title, did not claim the disputed area by adverse possession. "[T]he failure of a predecessor in title to convey the disputed area, either orally or by deed, destroys the connection between successive adverse claimants which is necessary to the successful acquisition of title by tacking successive adverse possessions . . . . See also 16 R. Powell, Real Property (2005) § 91.10 [2] (tacking not permitted when it is shown that the claimant's predecessor in title did not intend to convey the disputed parcel)." (Internal quotation marks omitted.) *Durkin Village Plainville, LLC* v. *Cunningham*, supra, 652.

Moreover the court found, after hearing a great deal of evidence concerning the mowing of the grass in the disputed area and the maintenance of the hedge adjacent to the disputed area, that the evidence was not persuasive as to any of the parties' claims of adverse possession. The plaintiff has not demonstrated that the court's factual findings are clearly erroneous. "The use is not exclusive if the adverse user merely shares dominion over the property with other users." (Internal quotation marks omitted.) *Woycik* v. *Woycik*, 13 Conn. App. 518, 520, 537 A.2d 541 (1988).

The judgment is affirmed.

In this opinion the other judges concurred.