******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# PETER GAUGHAN ET AL. *v.* PETER HIGGINS
## (AC 40556)

DiPentima, C. J., and Elgo and Bear, Js.

*Syllabus*

The plaintiffs, P and J, who owned property that abutted property of the defendant, sought, inter alia, to quiet title to a triangular strip of land contiguous to all parcels and to which all of the parties claimed title. The defendant filed counterclaims for quiet title and water damage. Following a trial to the court, the trial court found in favor of the plaintiffs on their claims for quiet title and trespass and on the defendant's counterclaims for quiet title and water damage. The court found in favor of the defendant on the plaintiffs' claim for slander of title and awarded nominal damages for the defendant's trespass but declined to award punitive damages or attorney's fees. From the judgment rendered thereon, the defendant appealed and the plaintiffs cross appealed to this court. *Held:*

1. The trial court properly credited the testimony of the plaintiffs' expert witness; it was clear on the basis of the record that the court credited the conclusions of the plaintiffs' expert witness regarding the plaintiffs' ownership of the disputed area over the conclusions of the defendant's expert witness, and such a credibility determination was the responsibility and exclusive province of the trial court as fact finder.

2. The trial court's factual findings were not clearly erroneous: that court properly found that the disputed area was located on the plaintiffs' property in light of the testimony of the plaintiffs' expert and the surveys admitted into evidence, its finding that the defendant showed P the boundaries of the plaintiffs' parcel, which included the disputed area, was supported by P's testimony that the court was free to credit, and its finding that iron pins referenced in a 1991 warranty deed were located on the property in the mid-1990s when a survey was performed was supported by the testimony of the plaintiffs' expert; moreover, although the trial court's finding that the iron pins were in the same location prior to trial as they were in the mid-1990s was clearly erroneous, as there was no support for that finding in the record, that isolated misstatement of fact did not undermine the rest of the court's findings, and because that error did not affect this court's conclusion that the trial court's finding as to the location of the plaintiffs' property was not clearly erroneous, it did not affect the outcome of this appeal.

3. The defendant could not prevail on his claim that the trial court's finding that he trespassed on the plaintiffs' property was improper because it was premised on the court's erroneous conclusion that the plaintiffs owned the disputed area; the trial court having properly determined that the plaintiffs owned the disputed area, and the defendant not having contested the other elements of the trespass action, the defendant's claim was untenable.

4. The trial court improperly awarded the plaintiffs the fees of their expert witness as an element of their bill of costs; contrary to the plaintiffs' claim, the defendant did not waive his objection to the plaintiffs' bill of costs, and because a land surveyor is not a listed expert witness whose cost may be reimbursed pursuant to statute (§ 52-260 [f]), the trial court lacked authority to award costs to the plaintiffs for their expert witness fees.

5. The trial court properly denied the plaintiffs' request for common-law punitive damages and attorney's fees; that court specifically found that although the defendant trespassed on the plaintiffs' property, his actions in marking what he believed was the boundary line between his parcel and the plaintiffs' parcel stemmed from his mistaken belief that he owned the disputed property, and although a trial court may find reckless indifference without finding actual intention to do harm, that did not mean that the court's factual findings required it to conclude that the defendant acted with reckless indifference.

6. The trial court properly determined that the defendant did not slander the plaintiffs' title to their property; the plaintiffs failed to provide any

legal authority indicating that the defendant's delivery of a notice of revocation concerning the disputed land through a state marshal constituted publication to a third party, the plaintiffs did not prove any pecuniary loss as a result of the marshal being provided the notice to deliver to the plaintiffs, and they did not demonstrate that the defendant acted with reckless disregard for the truth by sending the notice to the plaintiffs.

Argued September 13—officially released December 18, 2018

*Procedural History*

Action seeking, inter alia, to quiet title to certain real property, and for other relief, brought to the Superior Court in the judicial district of Tolland, where the defendant filed a counterclaim; thereafter, the matter was tried to the court, *Cobb, J.*; judgment for the plaintiffs on the complaint in part and on the counterclaim in part, from which the defendant appealed and the plaintiffs cross appealed to this court. *Reversed in part; further proceedings.*

*Edward Muska*, for the appellant-cross appellee (defendant).

*Maria K. Tougas*, for the appellees-cross appellants (plaintiffs).

*Opinion*

ELGO, J. This quiet title action concerns a triangular strip of land between the parties' properties. The defendant, Peter J. Higgins, appeals from the judgment of the trial court, rendered after a bench trial, in favor of the plaintiffs, Peter P. Gaughan and Jacqueline McGann. On appeal, the defendant claims that the court improperly (1) credited the testimony of the plaintiffs' expert witness, (2) found facts not supported by the record, (3) found that the defendant trespassed on the plaintiffs' property, and (4) awarded the plaintiffs the fees of their expert witness as an element of the bill of costs. The plaintiffs cross appeal, claiming that the court improperly (1) denied their request for punitive damages and (2) determined that the defendant did not slander the plaintiffs' title. We reverse the judgment of the trial court with respect to the defendant's fourth claim and affirm the judgment in all other respects.

The record reveals the following facts and procedural history. The plaintiffs are the owners of real property known as 8 White Road in Ellington. The defendant is the owner of real property known as 51 South Road in Ellington, an abutting property to the north.

In 1969, the defendant's parents owned both the plaintiffs' and the defendant's parcels and subdivided the land into two parcels in order to convey the property at 8 White Road to the defendant.[1] The defendant's mother later deeded the property at 51 South Road to the defendant. Prior to the subdivision of the property in 1969, the defendant witnessed his father and an unidentified gentleman walk the boundaries of what became the 8 White Road property and place iron pins in three of the property's four corners.

In 1991, Peter Gaughan and his father, David Gaughan, purchased the undeveloped 8 White Road property from the defendant.[2] Prior to purchasing the property, Peter Gaughan walked the property with the defendant, and the defendant pointed out the parcel's boundaries, including the three iron pins that were located in the southeast, northeast, and northwest corners of the parcel.[3]

The disputed triangular strip of land between the parties' properties is approximately thirty-three feet wide where it abuts South Road at the northwest boundary corner to the plaintiffs' property and decreases in width to roughly five feet at the northeast boundary corner of their property. The disputed strip includes a hedgerow that runs almost all the way across the boundary, which the defendant's father planted in the 1940s. The plaintiffs believed that they owned the land to the south of the hedgerow.

In 1997, after Peter Gaughan started clearing the 8 White Road property in order to construct a residence, the defendant began to experience surface water flow-

ing onto his property. In response, the defendant constructed a drainage swale just south of the hedgerow, which alleviated the water issue. The plaintiffs did not object to the defendant's construction of the swale, which the defendant maintained.

Years later, the defendant began to dispute the plaintiff's ownership of the triangular strip of land that runs along the boundary of their properties to the south of the hedgerow. That dispute precipitated this quiet title action commenced by the plaintiffs in 2016. Their complaint contained four counts: quiet title, trespass, slander to title, and adverse possession. In response, the defendant asserted two counterclaims: quiet title and water damage.[4]

In its June 12, 2017 memorandum of decision, the court found in favor of the plaintiffs on their claims for quiet title and trespass and on the defendant's claims for quiet title and water damage. The court found in favor of the defendant on the plaintiffs' claim for slander of title. Specifically, the court found that the 1991 warranty deed from the defendant to Peter Gaughan, granting him the 8 White Road parcel, is clear and unambiguous, and includes the disputed area as defined by the iron pins referenced in the deed that demarcate three of the four corners of the property.[5] As for the plaintiffs' trespass claim, the court found that, although the defendant had trespassed on the plaintiffs' property, the plaintiffs did not provide the court with any evidence of costs associated with remedying the alleged injuries therefrom. The court therefore found that the plaintiffs were entitled to $100 in nominal damages for the defendant's trespass but declined to award them any punitive damages or attorney's fees. From that judgment, the defendant now appeals and the plaintiffs cross appeal. Additional facts will be set forth as necessary.

I

THE DEFENDANT'S APPEAL

A

In his first claim on appeal, the defendant essentially challenges the court's credibility determination. He claims that the court improperly credited the testimony of the plaintiffs' surveyor expert witness in construing the language of the plaintiffs' deed. We do not agree.

"[W]here the testimony of witnesses as to the location of the land described in deeds is in conflict, it becomes a question of fact for the determination of the court which may rely upon the opinions of experts to resolve the problem and it is the court's duty to accept that testimony or evidence which appears more credible. . . . In determining credibility of the experts, the court as the trier of fact could believe all, some or none of the testimony. . . . Moreover, credibility determinations are beyond the reach of an appellate court." (Cita-

tions omitted; footnote omitted; internal quotation marks omitted.) *Har* v. *Boreiko*, 118 Conn. App. 787, 796–97, 986 A.2d 1072 (2010). Nonetheless, the trial court cannot "arbitrarily disregard, disbelieve or reject an expert's testimony in the first instance. . . . Where the trial court rejects the testimony of [an] expert, there must be some basis in the record to support the conclusion that the evidence of the [expert witness] is unworthy of belief." (Citations omitted; internal quotation marks omitted.) *Builders Service Corp.* v. *Planning & Zoning Commission*, 208 Conn. 267, 294, 545 A.2d 530 (1988).

The court heard extensive testimony from the defendant's surveyor expert witness, Robert Saunders, who explained in detail the basis for his conclusion that the plaintiffs' deed did not convey title of the disputed area to the plaintiffs. The defendant argues that although the court mentioned at closing arguments that Saunders' testimony was "good" and "thorough," it did not address Saunders' evidence and reasoning in its memorandum of decision.[6]

We conclude that the court did not arbitrarily disregard Saunders' testimony. It is clear on the basis of the record and the court's memorandum of decision that, after considering all of the evidence before it, the court chose to credit the conclusions of the plaintiffs' expert witness regarding the plaintiffs' ownership of the disputed area over that of Saunders. Making such a credibility determination is the responsibility and exclusive province of the trial court as the fact finder. Accordingly, we reject the defendant's claim.

B

The defendant next claims that certain factual findings were not supported by the evidence in the record and were clearly erroneous. We address each claim in turn.

The following additional facts are relevant to the defendant's claims. The plaintiffs presented the expert testimony of Russell Heintz, a licensed land surveyor. Heintz testified that he began working with the plaintiffs in 1997, when Peter Gaughan was constructing his home on the 8 White Road property. In order to create his own survey, Heintz utilized a 1996 survey certified by land surveyor Barry Clarke to locate the pins referenced in the 1991 warranty deed. Heintz testified that in 1997 he saw all three pins referenced in the 1991 warranty deed, though he could not say which pins he used to create his survey. Heintz also testified that in 1997 he saw the northwest corner pin, but that it was gone when he returned to the property in 2013. Additionally, Heintz testified as to the methodology he used in coming to the opinion that the disputed area was part of the land deeded to the plaintiffs. He explained that he determined the area of land included in the deed description

by starting at the first pin called for in the deed and working his way around the measurements of the property from that point, following the deed description.

As part of his case, the defendant called Saunders, a licensed land surveyor, as his expert witness. Saunders testified as to his methodology, explaining that in order to confirm that the pins in the ground were the pins described in the deed, he had to establish the right of way on White Road as the basis for the survey and apply the deed distances from that point. On the basis of this method, Saunders first established the southerly line of the plaintiffs' property based on research indicating that there had been a stone wall south of White Road, across the street from the plaintiffs' property. From there, Saunders established that the southern property line was thirty-three feet north of where the stone wall had been, based on his research that White Road was thirty-three feet wide.

Our review of the trial court's factual findings is well established. "[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . The credibility of the witnesses and the weight to be accorded to their testimony is for the trier of fact. . . . [An appellate] court does not try issues of fact or pass upon the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *Har* v. *Boreiko*, supra, 118 Conn. App. 795. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings." (Internal quotation marks omitted.) *Lacic* v. *Tomas*, 78 Conn. App. 406, 410–11, 829 A.2d 1, cert. denied, 266 Conn. 922, 835 A.2d 472 (2003).

1

The defendant first argues that the court's factual finding as to the location of the plaintiffs' property was not supported by the evidence in the record and was clearly erroneous. We disagree.

In its memorandum of decision, the court settled and quieted title "in favor of the plaintiffs and against the defendant [regarding] the property located at 8 White Road, which includes the area in dispute in this case, and is described in the 1991 warranty deed that is filed in the Ellington land records at Volume 186, page 124." Heintz' testimony and the surveys admitted into evidence as completed by Clarke and Heintz indicate that

the location of the plaintiffs' property correlates with the deed description and the pins described therein. The court's finding as to the location of the plaintiffs' property and the disputed area is therefore supported by the record and is not clearly erroneous.

2

The defendant next asserts that the court's specific finding that the defendant showed the plaintiff the boundaries of the 8 White Road parcel, which included the disputed area, was not supported by the defendant's testimony, and was therefore clearly erroneous. We disagree.

The defendant argues that his testimony "directly contradicted" the court's finding, as he testified that the area he showed the plaintiff did not include the disputed area. However, Peter Gaughan testified at trial that, prior to purchasing the property, he walked the property with the defendant from "[p]in to pin to pin," and that the disputed area was within the area that the defendant showed him. The court, as fact finder, was free to credit that testimony. Accordingly, the court's finding is supported by the record and is not clearly erroneous.

3

The defendant also claims that the court's finding that "the iron pins referenced in the 1991 warranty deed were located on the property in the mid-1990s when the plaintiff had a survey done" was not supported by Heintz' testimony. We disagree.

The defendant broadly asserts that "[t]he testimony of the [plaintiffs'] surveyor was clearly contradictory, not consistent, and not credible. To rely on this for the basis of a finding was clearly erroneous."[7] The defendant contends that Heintz testified that he had no specific memory of having seen the pin in the northwesterly corner of the plaintiffs' property when he visited the property in 1996 or 1997, and that he did not take measurements to verify the location of all the pins. Heintz, however, also testified that he was certain that he saw all three of the pins referenced in the 1991 warranty deed when he visited the plaintiffs' property in 1996 or 1997. Accordingly, there is support within the record for the trial court's finding that Heintz saw the pins when he visited the property in 1996 or 1997. That finding, therefore, is not clearly erroneous.

4

The defendant also argues that the trial court's finding that the pins "were in the same location prior to trial" as they were in the mid-1990s was contradicted directly by the evidence. We agree.

Heintz testified that he saw the northwest corner pin referenced in the deed in 1997, but that it was gone when he went back to the property in 2013. As such,

the court's finding that the pins were in the same location prior to trial as they were in the mid-1990s is clearly erroneous, as there is no support for the finding within the record. Nevertheless, this isolated misstatement of fact does not undermine the rest of the court's findings, and because it does not affect our conclusion that the court's finding as to the location of the plaintiffs' property was not clearly erroneous, it does not affect the outcome of this appeal.

## C

The defendant next claims that the court erred in finding that the defendant trespassed on the plaintiffs' property because its finding is premised on the court's erroneous conclusion that the plaintiffs owned the disputed area. We disagree.

"[T]he scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 87, 931 A.2d 237 (2007). Whether the trial court properly concluded that the defendant trespassed on the plaintiffs' property is a question of law subject to our plenary review. Id.

It is well established that "[t]he essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." (Internal quotation marks omitted.) Id. In its memorandum of decision, the court determined that the plaintiffs had an exclusive ownership interest in the disputed area, and that the defendant intentionally entered the plaintiffs' property and caused injury. The defendant argues that, on the basis of his first two claims on appeal, the court's finding that the plaintiffs owned the disputed area is erroneous and, therefore, the trial court's conclusion that the defendant trespassed on the plaintiffs' property is also erroneous. In his brief, the defendant does not contest the court's findings as to the other elements of the trespass action. Because we agree with the court's conclusion that the plaintiffs owned the disputed area; see part I B 1 of this opinion; the defendant's claim is untenable.

## D

The final claim in the defendant's appeal is that the court erroneously awarded expert witness fees to the plaintiffs as an element of the bill of costs.[8] Specifically, the defendant argues that the court should not have

awarded the plaintiffs $2500 in costs for payment of expert witness fees because Heintz, a land surveyor who testified at trial on behalf of the plaintiffs, did not fall within the category of experts listed within General Statutes § 52-260 (f).[9] We agree.

The following facts and procedural history are relevant to our discussion of this issue on appeal. On February 17, 2017, the plaintiffs filed a bill of costs in the amount of $4256.33, which included reimbursement for costs associated with Heintz' expert fees in the amount of $2500.[10] After judgment was rendered in favor of the plaintiffs, and within fourteen days, the defendant filed an objection to the plaintiffs' bill of costs, arguing that Heintz' fees were not taxable under our statutes.[11] At its nonarguable calendar, the court granted the plaintiffs' bill of costs in the amount of $4256.33. The defendant thereafter amended his appeal to include an appeal of the "[o]rder of trial court judge taxing costs on August 11, 2017."

As a preliminary issue, the plaintiffs argue that the defendant waived[12] his right to contest the bill of costs by failing to file an objection to the bill of costs within the fourteen day period specified by Practice Book § 18-5 (a)[13] and failing to file a motion for review within the twenty day period provided by Practice Book § 18-5 (b).[14] The plaintiffs' reliance on the defendant's failure to file a motion for review to support their claim of waiver is misplaced. The requirement of a motion for review appears to apply to the procedure by which the clerk taxes costs, which are typically ministerial assessments. See *Traystman, Coric & Keramidas, P.C.* v. *Daigle*, 282 Conn. 418, 429–30, 922 A.2d 1056 (2007) ("the costs to be included in a bill of costs generally are of a type that may be granted automatically by the court clerk. . . . [I]t is implicit in our statutes governing recoverable costs, and our rules of practice expressly contemplate, that the costs requested in a bill of costs generally are intended to be of a type that the court clerk may grant automatically." [Citations omitted; footnote omitted.]); *Fengler* v. *Northwest Connecticut Homes, Inc.*, 215 Conn. 286, 291, 575 A.2d 696 (1990) ("[a]n examination of General Statutes § 52-257, entitled '[f]ees of parties in civil actions,' reveals that most of the awards are automatic assessments, not involving the discretion of the court"); W. Horton, et al., 1 Connecticut Practice Series: Superior Court Civil Rules (2017–2018 Ed.) § 18-5, author's comments, p. 872 ("[a]s the clerk's role is purely ministerial, discretionary questions are to be determined by the court"). Under Practice Book § 18-5 (a), a timely written objection triggers notice and the right to a hearing before the *clerk*. Accordingly, the motion for review provides for judicial review of the clerk's *ministerial* assessments. That process is not implicated here.

Expert witness fees are not subject to the clerk's

ministerial assessments. "A review of the language of General Statutes § 52-260 (f) indicates that the statute does not provide for an automatic assessment; rather . . . it states that the *court shall determine* a reasonable fee . . . ." (Emphasis in original; internal quotation marks omitted.) *Boczer* v. *Sella*, 113 Conn. App. 339, 344 n.6, 966 A.2d 326 (2009). Here, the record reflects that the bill of costs and the objection were referred directly to the court for its nonarguable calendar. Because the court and not the clerk ruled on the taxation of expert witness fees, no motion for review was required. Accordingly, the defendant properly appealed from the trial court's ruling and did not waive his claim that the fees were awarded improperly.

Having determined there was no waiver by the defendant, we consider the defendant's claim. "It is a settled principle of our common law that parties are required to bear their own litigation expenses, except as otherwise provided by statute. . . . Because [c]osts are the creature of statute . . . and unless the statute clearly provides for them courts cannot tax them. . . . Accordingly, the [plaintiffs] can prevail only if the statutory provisions on which [they rely] clearly empower the trial court to tax the cost of the [expert's] testimony." (Citations omitted; internal quotation marks omitted.) *Arnone* v. *Enfield*, 79 Conn. App. 501, 531–32, 831 A.2d 260, cert. denied, 266 Conn. 932, 837 A.2d 804 (2003). "Thus, the [plaintiffs'] claim raises an issue of statutory construction over which our review is plenary." *Ludington* v. *Sayers*, 64 Conn. App. 768, 779–80, 778 A.2d 262 (2001).

A land surveyor is not a listed expert witness whose cost may be reimbursed pursuant to General Statutes § 52-260 (f). Consequently, Heintz' fees cannot be reimbursed. See *Arnone* v. *Enfield*, supra, 79 Conn. App. 534 (prevailing party only authorized to recover costs expressly authorized by statute, and "[a]n economist is not a listed expert whose cost may be reimbursed under § 52-260 [f]"); *Lurie & Associates, Inc.* v. *Tomik Corp.*, 37 Conn. App. 865, 868–69, A.2d 146 (1995) (prevailing party only authorized to recover costs expressly authorized by statute, and "[n]owhere does § 52-260 provide for expert witness fees when a handwriting expert is called to testify as an expert witness"). Accordingly, we conclude that the trial court lacked authority to award costs to the plaintiffs for Heintz' expert fees.

II

THE PLAINTIFFS' CROSS APPEAL

A

The plaintiffs first claim that the trial court improperly failed to award them common-law punitive damages and attorney's fees.[15] We disagree.

The following additional facts are relevant to this claim on appeal. Prior to litigation, the defendant

engaged in self-help remedies to mark what he believed was the boundary line between his parcel and the plaintiffs' parcel. On one occasion he sprayed bleach on the grass along his claimed boundary of the disputed area, killing the grass in that area. Thereafter, the defendant twice used vinegar to mark his claimed boundary line. The defendant also painted trees, fence poles, and other markers with permanent orange paint to mark the property that he claimed he owned within the disputed area.

Our Supreme Court consistently has "stated that [i]n order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . . If the evidence discloses that a defendant was recklessly indifferent to the rights of a plaintiff, an actual intention to do harm to the plaintiff is not necessary." (Citations omitted; internal quotation marks omitted.) *Berry* v. *Loiseau*, 223 Conn. 786, 811, 614 A.2d 414 (1992). Further, "common-law punitive damages . . . are limited under Connecticut law to litigation expenses, such as attorney's fees less taxable costs." *Hylton* v. *Gunter*, 313 Conn. 472, 484, 97 A.3d 970 (2014). "Generally, attorney's fees may not be recovered, either as costs or damages, absent contractual or statutory authorization. . . . Attorney's fees may be awarded, however, as a component of punitive damages. . . . To furnish a basis for recovery of such damages, the pleadings must allege[16] and the evidence must show wanton or wilful malicious misconduct, and the language contained in the pleadings must be sufficiently explicit to inform the court and opposing counsel that such damages are being sought." (Internal quotation marks omitted.) *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 646, 867 A.2d 860, cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005).

Our standard of review is well settled. "[T]he trial court has broad discretion in determining whether damages are appropriate. . . . Its decision will not be disturbed on appeal absent a clear abuse of discretion." (Citation omitted; internal quotation marks omitted.) *Elm City Cheese Co.* v. *Federico*, 251 Conn. 59, 90, 752 A.2d 1037 (1999). Furthermore, "in order to award punitive damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights. . . . Recklessness is a state of consciousness with reference to the consequences of one's acts. . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . Wanton misconduct is reckless misconduct. . . . It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences

of the action. . . . Whether the defendant acted recklessly is a question of fact subject to the clearly erroneous standard of review." (Citations omitted; internal quotation marks omitted.) *Franc* v. *Bethel Holding Co.*, 73 Conn. App. 114, 137–38, 807 A.2d 519, cert. granted, 262 Conn. 923, 812 A.2d 864 (2002) (appeal withdrawn October 21, 2003).

At its core, the plaintiffs' argument is that the court improperly determined that the defendant's conduct did not amount to reckless indifference. Accordingly, the plaintiffs attack the court's factual finding, which is subject to the clearly erroneous standard of review. Id., 138.

In its memorandum of decision, the court stated: "The court declines to award punitive damages. Although the defendant trespassed on the plaintiffs' property, the court finds that his actions stemmed from his belief that he owned the property and therefore he believed that he had the right to mark within his own property. That his belief has now been found to be incorrect does not establish reckless indifference and entitle the plaintiffs to punitive damages."

The plaintiffs argue that the court's reasoning was incorrect and clearly erroneous because "regardless of whether [the] defendant believed he was right or not, the conduct he engaged in demonstrated a wanton disregard of [the] plaintiffs' rights . . . ." The plaintiffs rely on our Supreme Court's decision in *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 234 A.2d 825 (1967). In *Collens*, the court stated: "Mere belief in the right of the defendant to act as the court found it did act *would not necessarily* prevent the award of such damages. The injuries to the plaintiffs were inflicted in a spirit of wanton disregard of their rights." (Emphasis added.) Id., 489.

The plaintiffs fail to establish how the reasoning in *Collens* makes the trial court's reasoning clearly erroneous. In *Collens*, the court concluded that "[t]he conduct of the defendant would appear to be at least in reckless disregard for the consequences it knew or should have known would result, and, if this element is present, an actual intention to do harm to the plaintiffs is not necessary." Id., 490. In the present case, the court specifically found, and the record supports its finding, that the defendant's actions stemmed from his mistaken belief that he owned the disputed property. While the plaintiffs are correct in pointing out that a trial court may find reckless indifference without finding actual intention to do harm, that does not mean that the court's factual findings required it to conclude that the defendant acted with reckless indifference. On the basis of our review of the record, we cannot conclude that the court's findings were clearly erroneous.

B

The plaintiffs' final claim on cross appeal is that the court improperly determined that the defendant did not slander the title to their property. We disagree.

The following additional facts are relevant to this claim on appeal. On August 10, 2014, the defendant had a state marshal serve on the plaintiffs a "notice of revocation" concerning the disputed area of land, indicating that he would no longer permit them to utilize that area.[17] The notice was signed by the defendant and served on Peter Gaughan by a marshal and a copy was left for Jacqueline McGann at her usual place of abode at 8 White Road.

"[O]ur standard of review when the legal conclusions of the trial court are challenged is plenary, and requires us to determine whether the conclusions reached are legally and logically correct and whether they find support in the facts set forth in the memorandum of decision." *Elm Street Builders, Inc.* v. *Enterprise Park Condominium Assn., Inc.*, 63 Conn. App. 657, 669, 778 A.2d 237 (2001). "A cause of action for slander of title consists of the uttering or publication of a false statement derogatory to the plaintiff's title, with malice, causing special damages as a result of diminished value of the plaintiff's property in the eyes of third parties. The publication must be false, and the plaintiff must have an estate or interest in the property slandered. Pecuniary damages must be shown in order to prevail on such a claim." (Internal quotation marks omitted.) Id., 669–70. "[A]ctual malice requires a showing that a statement was made with knowledge that it was false or with reckless disregard for its truth. . . . A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth. . . . Further, proof that a defamatory falsehood has been uttered with bad or corrupt motive or with an intent to inflict harm will not be sufficient to support a finding of actual malice . . . although such evidence may assist in drawing an inference of knowledge or reckless disregard of falsity." (Internal quotation marks omitted.) *Fountain Pointe, LLC* v. *Calpitano*, 144 Conn. App. 624, 655–56, 76 A.3d 636, cert. denied, 310 Conn. 928, 78 A.3d 147 (2013).

In its memorandum of decision, the court reasoned that "the plaintiffs have failed to prove their slander of title claim because they have failed to establish that notice was 'published' to anyone but the plaintiffs. It was not recorded on the land records or distributed to any third party. Accordingly, without distribution of the notice to third parties there has not been, and could not be, any 'special damages as a result of diminished value of the plaintiffs' property in the eyes of third parties.' Also, the court finds that the plaintiffs have not proved that in sending the plaintiffs the notice that the defendant acted with reckless disregard for its truth."

The plaintiffs argue that the court's finding that the notice was not published to anyone but the plaintiffs was erroneous because the notice was distributed to a marshal, who is a third party. In response, the defendant argues that "[t]he notice was clearly intended to be communicated to the [plaintiffs] and not to third parties, and the state marshal was used as a means of delivery." We agree with the defendant. The plaintiffs fail to provide any legal authority, and we are aware of none, indicating that delivery through a state marshal constitutes publication to a third party. We do not find the plaintiffs' argument persuasive that the possibility of the marshal reading the notice is enough to constitute publication to a third party.

Further, we agree with the trial court that the plaintiffs have failed to prove that there have been "any 'special damages as a result of diminished value of the plaintiffs' property in the eyes of third parties.' " Looking beyond our conclusion that the statement was not published to a third party, there is no evidence in the record to establish that the plaintiffs suffered pecuniary loss *as a result of* the marshal being provided the notice to deliver to the plaintiffs. In their brief, the plaintiffs argue that they are entitled to pecuniary damages for various reasons, but none establishes how the delivery of the notice itself caused them damages.[18]

Finally, we agree with the trial court that the plaintiffs failed to prove that the defendant acted with reckless disregard for the truth by sending the notice to the plaintiffs. The plaintiffs address this element in their brief only by stating that malice was "demonstrated by [the] defendant's testimony that 'things started getting a little rough and there was no communication' . . . [and that the] [d]efendant's statements in the notice were false because the [e]state of Mary Higgins never owned the disputed property. It was deeded to [the] [p]laintiffs prior to her death in 1991." We find these arguments unconvincing and fail to see how either allegation, even if proved, amounts to a reckless disregard for the truth in the context of the alleged slander of the plaintiffs' title. We therefore conclude that the plaintiffs failed to establish that the court improperly determined that the defendant did not slander the title to their property.

The judgment is reversed only as to the award of costs and the case is remanded for a recalculation of the award of costs consistent with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] We note, as did the trial court in its memorandum of decision, that the description of the 8 White Road parcel in the warranty deed from the defendant's parents to the defendant is the same as the description in the 1991 warranty deed from the defendant to Peter Gaughan.

[2] Subsequently, David Gaughan transferred his interest in the property to Peter Gaughan, who later transferred the property in common to his wife, Jacqueline McGann. Those deeds are not at issue in this case.

[3] The 1991 warranty deed provided to Peter Gaughan describes the 8 White Road property as follows: "Beginning at an iron pin set in the northerly line of White Road, which point is the southeasterly corner of the premises herein described and which point is the southwesterly corner of land now or formerly of Tolisano; thence from said point and place of beginning in a general northerly direction along land now or formerly of Tolisano, One Hundred Sixty (160) feet more or less to an iron pin; thence in a general easterly direction along other land now or formerly of Steven H. Higgins and Mary B. Higgins, Four Hundred Fifteen (415) feet more or less to an iron pin set in the general easterly line of South Road; thence in a general southerly direction along the easterly side of South Road, Three Hundred Thirty (330) feet more or less to the intersection of White Road; thence in a general northeasterly direction along the northerly line of White Road, Four Hundred Fifty (450) feet more or less to the point and place of beginning."

[4] The defendant asserted a third claim for trespass in his answer, but he withdrew the claim on the record during trial.

[5] On appeal, both the plaintiffs and the defendant agree with the court that the 1991 warranty deed from the defendant to Peter Gaughan is clear and unambiguous.

[6] The defendant refers to the following colloquy that occurred during closing arguments:

"The Court: So in order for me to find for [the defendant], I have to choose your surveyor's interpretation, correct?

"[The Defendant's Counsel]: That is correct. Yes.

"The Court: Now, why would I do that? Because this is what I'm struggling with. I mean, your expert witness was very good, and he seemed very thorough and all of that. But my job is to interpret the deed, and the deed that I need to interpret is exhibit 3.

"[The Defendant's Counsel]: Correct.

"The Court: Correct?

"[The Defendant's Counsel]: Yes.

"The Court: And in order to look at this deed, the cases say I have to look at the language in the deed.

"[The Defendant's Counsel]: Um-hmm.

"The Court: And where's the case? I don't see any language in this deed that would require me to step out of the deed and look back to 1929, which is what your surveyor wants me to do."

[7] The defendant also argues that Heintz' testimony that he saw the pins on the property in 1996 or 1997 should not be credited because of what he wrote on certain maps he prepared and because of where he set a property pin in 2013. However, as we have discussed previously in this opinion, making credibility determinations is within the province of the trial court. See part I A of this opinion.

[8] Although the trial court awarded costs in addition to those discussed in part I D of this opinion, the plaintiff does not challenge those costs on appeal, which we therefore do not disturb.

[9] General Statutes § 52-260 (f) provides: "When any practitioner of the healing arts, as defined in section 20-1, dentist, registered nurse, advanced practice registered nurse or licensed practical nurse, as defined in section 20-87a, psychologist or real estate appraiser gives expert testimony in any action or proceeding, including by means of a deposition, the court shall determine a reasonable fee to be paid to such practitioner of the healing arts, dentist, registered nurse, advanced practice registered nurse, licensed practical nurse, psychologist or real estate appraiser and taxed as part of the costs in lieu of all other witness fees payable to such practitioner of the healing arts, dentist, registered nurse, advanced practice registered nurse, licensed practical nurse, psychologist or real estate appraiser."

[10] In their bill of costs, the plaintiffs cited General Statutes § 52-257 (b) (1) for the proposition that the defendant may be taxed for the expense of Heintz' expert fees.

Section 52-257 (a) sets forth the costs available to the prevailing party in a civil action in which the matter in demand is not less than fifteen thousand dollars. Section 52-257 (b) provides in relevant part: "Parties shall also receive: (1) For each witness attending court, the witness' legal fee and mileage . . . ."

[11] The defendant also objected to the plaintiffs' bill of costs entry for a "court discretionary fee," arguing that "there has been no finding that this civil action was a difficult or extraordinary case." The defendant, however, has not contested on appeal this aspect of the trial court's award.

[12] In their brief, the plaintiffs specifically argue that the defendant "waived

his right" to contest the plaintiffs' bill of costs, but the plaintiffs do not cite to any authority to support their argument that the failure to follow Practice Book procedure amounts to a waiver.

[13] The defendant argues that he timely filed an objection to the plaintiffs' bill of costs within fourteen days of the trial court's judgment. Practice Book § 18-5 (a) provides in relevant part: "[C]osts may be taxed by the clerk in civil cases fourteen days after the filing of a written bill of costs provided that no objection is filed. If a written objection is filed within the fourteen day period, notice shall be given by the clerk to all appearing parties of record of the date and time of the clerk's taxation. The parties may appear at such taxation and have the right to be heard by the clerk."

The defendant essentially contends that because the plaintiffs became the prevailing party when the judgment was rendered in their favor, their bill of costs only became operative at that point, and his objection to the bill of costs was therefore timely. Practice Book § 1-8 provides for a liberal interpretation of the rules "where it shall be manifest that a strict adherence to them will work surprise or injustice." To conclude that parties must object to a bill of costs filed before judgment has been rendered would work surprise and injustice. "It is elementary that, whether fees and costs are a matter of right or discretion, they ordinarily are awarded to the party that prevails in the case and, until there is a prevailing party, they do not arise." *Danbury* v. *Dana Investment Corp.*, 249 Conn. 1, 18, 730 A.2d 1128 (1999). Accordingly, we decline to adopt the plaintiffs' view that the defendant failed to timely object to their bill of costs.

[14] Practice Book § 18-5 (b) provides for judicial review of the clerk's assessment, stating: "Either party may move the judicial authority for a review of the taxation by the clerk by filing a motion for review of taxation of costs within twenty days of the issuance of the notice of taxation by the clerk."

[15] In their brief, after discussing punitive damages generally, the plaintiffs argue that the court "further erred because it held that attorney's fees could not be awarded in a judgment of trespass." While the plaintiffs mischaracterize the court's holding, we need not address their argument on attorney's fees separate from our discussion of punitive damages. The plaintiffs argue that the court "should have awarded $22,000 in attorney's fees as common-law punitive [damages] in this case as a result of [the] defendant's misconduct." Because we disagree with the plaintiffs' argument that the court erred in not awarding punitive damages, we need not address whether attorney's fees should have been awarded as a component of punitive damages.

[16] In their second count claiming trespass, and as the sole basis for their claim of punitive damages, the plaintiffs allege that "[o]ver the past several years, the [d]efendant has unlawfully entered onto the disputed area without license, and caused extensive property damage, including spraying poison onto the grass, trees, and shrubs, and by defacing sheds and tampering with other personal property stored therein. . . . As a result of the aforesaid conduct by the [d]efendant, the [p]laintiffs have suffered damages." In their prayer for relief, the plaintiffs did not specifically request punitive damages. They did request, inter alia, money damages and an award of reasonable attorney's fees and costs.

To the extent that the defendant claims the plaintiffs failed to properly plead an award of attorney's fees as a component of punitive damages, this court recently stated that "[b]ecause punitive damages may include attorney's fees, we treat this claim for attorney's fees as a request for punitive damages. Although the plaintiff did not claim attorney's fees in the form of punitive damages but instead merely as 'attorney's fees,' the defendant necessarily [was] on notice that punitive damages were being claimed because of the type of conduct pleaded and the fact that attorney's fees, [for this claim], could be obtained only through the awarding of punitive damages." (Internal quotation marks omitted.) *Chioffi* v. *Martin*, 181 Conn. App. 111, 141–42 n.15, 186 A.3d 15 (2018); see also *Stohlts* v. *Gilkinson*, 87 Conn. App. 634, 647, 867 A.2d 860 ("the plaintiffs' amended complaint painted a clear picture of an abutting landowner going to extreme measures to harass his neighbor. The incidents recounted included but were not limited to blocking their driveway, filing a false survey on the land records, building an unsightly fence and digging with machinery from six in the morning until ten thirty at night. Although the claim alleged was negligent infliction of emotional distress, the underlying conduct was intentional harassment. The defendants necessarily were on notice that punitive damages were being claimed because of the type of conduct pleaded and the fact that attorney's fees, in this case, could be obtained only through the awarding of punitive

damages." [Footnote omitted.]), cert. denied, 273 Conn. 930, 873 A.2d 1000 (2005).

[17] The "notice of revocation" provided: "From the Estate of the former Mary B. Higgins and now Executor and Owner by deed of record of the said Estate, Peter J. Higgins. The permission and privilege given to Peter P. Gaughan to conduct activity on an area of the said estate is revoked. Any and all articles placed on the property with or without permission are to be removed. Any articles that are not removed will be claimed as abandoned and will be removed by the current owner and successors of the said property."

[18] Specifically, the plaintiffs argue that they are entitled to pecuniary damages for three reasons: (1) the plaintiffs lost the use of the disputed area because the defendant built the swale on the disputed area without the town's permission and the plaintiffs pay the property taxes on the property, (2) Peter Gaughan testified that he does not believe he can sell the property until the cloud on the title is resolved, and (3) the plaintiffs paid Heintz to attempt to settle the dispute prior to litigation. We find those arguments unavailing. Indeed, they all seem to be related to the underlying dispute concerning the triangular strip of land and not as a result of the defendant's delivery of the notice to the plaintiffs through the marshal.

––––––––––––––––––––––––